# CHARLESTON.

John J. Hetzel *v.* The Pacific Mutual Life Insurance Company of California, *a Corporation*

(No. 6546)

Submitted October 2, 1929. Decided October 15, 1929. (Rehearing denied December 4, 1929.)

*Russell S. Ritz* and *H. F. Porterfield*, for plaintiff in error.
*Walter V. Ross*, for defendant in error.

WOODS, PRESIDENT:

This is an action on a non-cancellable income policy to recover certain accrued disability benefits claimed to be due thereunder. The insurance company prosecutes this writ from a judgment of the circuit court of Mercer County, entered on a jury verdict in favor of the plaintiff.

On June 24, 1927, the defendant company issued its policy insuring the plaintiff against disability, commencing while the same is in force, resulting from bodily injury effected through accidental means and from sickness, whereby, in consideration of the payment of certain annual premiums to be paid by the plaintiff, it was agreed, among other things, to pay the insured an indemnity at the rate of Three Hundred Dollars per month for the period throughout which such disability

"consists of continuous, necessary and total loss of all business time," etc. On August 9, 1928, the plaintiff, as a result of trouble with his feet and legs interfering with his locomotion, and acting upon medical advice, gave up the active management of his business, and immediately notified the defendant company of such disability through its claim agent, Mr. Fontain of Cincinnati, who acknowledged receipt of the notice. Shortly thereafter Dr. Hoge, an examiner for the company living in Bluefield, diagnosed the trouble as "muscular atrophy, involving the legs below the knees". Plaintiff was referred to a neurologist at the University of Pennsylvania, who, after due observation, diagnosed the malady as "Charcot-Marie, tooth form, muscular atrophy". No cure is known.

After the elapse of the sixty-day elimination period (August 9th to October 9th) provided for in the policy, the company voluntarily made payment of indemnity at the rate of $300.00 per month for the two months, October 10th to November 10th and November 10th to December 10th. Payment for the month ending January 10, 1929, was not made. In a letter from Mr. Fontain, bearing date January 17th, the plaintiff was informed that the company had been advised that he had taken an active part in the fall election of 1928, that he was acting as deputy sheriff for Beaver Pond District, since January 1, 1929, and that he had taken out other insurance in Penn Mutual Life Insurance Company, without notifying defendant company.

The point is made that the trial court should have struck out the plaintiff's evidence and directed a verdict for the defendant on the grounds (a) that the action was prematurely commenced; (b) that the plaintiff had other insurance, which should have been taken into account, in case of a recovery; (c) and that the plaintiff was not totally disabled from performing any and all business. A further objection was made to the refusal and giving of certain instructions.

Proofs of loss were filed in due time for the amounts due January 10th and February 10, 1929. Counsel for the defendant contends that no action can be taken on any par-

ticular monthly payment until after the expiration of sixty days. They insist that the letter of January 17, 1929, denying liability under the policy, merely denied indemnity under the claim for January pending at the time the letter was written, and that it reserved the right to pay any future claim should the plaintiff later become totally disabled. This, of course, implied that claimant could not hope for payment as long as his condition remained as it was at the time of the writing of the letter. Such a position plainly amounted to a denial of payment of all future indemnity, unless the plaintiff was able to bring himself within the requirements as laid down by the company in its letter. As the amount claimed for February was based on a condition similar to that of January, so the denial of liability goes to both months, and amounts to a waiver of the benefit of the sixty day clause. Cooley on Insurance, Vol. 4, p. 3959; 35 C. J. 75, sec. 782; 14 R. C. L. 1349, sec. 522; *Scott* v. *Life & Casualty Ins. Co.,* 34 Ga. App. 479; *Clark Millinery Company* v. *National Fire Insurance Company,* 160 N. C. 130; *Oil Service Company* v. *Detroit Fidelity & Surety Co.,* 105 W. Va. 130.

While the defendant did state in its specification of defense that the plaintiff had taken out insurance with the Penn Mutual Life Insurance Company, without giving written notice to it, *no proof was offered on trial to show that written notice was not given,* or what amount of insurance covering the same loss was carried with said company. This is an affirmative defense, and the burden of proof rested upon the defendant. *Jennings* v. *Clover Leaf Life & Casualty Co.,* 146 S. C. 41. Such conditions, according to our decisions, must be construed strictly against the company and liberally toward the insured. *Tucker* v. *Insurance Co.,* 58 W. Va. 30.

And now we come to the question of whether or not the plaintiff was totally disabled within the meaning of the policy sued on. We find from the reported cases that disability insurance may be divided into two general classes: those wherein the policy provides for an indemnity if the insured is disabled from transacting the duties pertaining to the occu-

pation in which he is then engaged, and those wherein the policy provides for an indemnity if the insured is disabled from performing any work or following any occupation. Counsel for the defendant company contend that, in the absence of evidence showing total disability to pursue any kind of gainful occupation, the plaintiff is not entitled to recover under the policy of insurance sued on. In other words, they would place the policy within the second class above referred to. But, will the policy warrant such a construction?

The case of *Lyon* v. *Railway Passenger Assurance Co.,* 46 Iowa 631, is relied on by the insurance company. There the contract provided that the insurer would "indemnify the assured * * * against loss of time, * * * while totally disabled and prevented from the transaction of all kinds of business." The court pertinently remarked in its opinion: "The language of the parties is plain and unambiguous, and needs no construction. It provides that defendant shall be liable for loss occasioned by being totally disabled from all kinds of business." The clause defining the disability in the policy needs only to be considered to see its inapplicability to the policy here under review. In the instant case, the application, which is made a part of the policy, in answer to the question "What is your occupation? (Describe fully)," recites, "Owner and manager of Bluefield Welding Co." Then follows this significant question: "Does the disability indemnity applied for in this and other companies or associations together with that under other insurance now held by you exceed your average monthly earnings?" to which the applicant replied, "No." Apropos of this last inquiry there is incorporated in the policy the following provision: "Indemnity for disability will not be paid under this policy at a rate in excess of the average earnings of the insured for the period of time that he has been actually employed during the two years immediately preceding the commencement of the disability for which the company is liable, and all premiums paid during the said two years for that portion of the disability indemnity in excess of the amount of such earnings will be returned upon request of the insured. * * *" Another provision in the policy provides

for the surrender of the policy in case of a change in the occupation of the insured, and upon the surrender of the policy to issue in lieu thereof, at the request of the insured, a new policy containing the same provisions as this policy except a change in the amounts of the benefit payable, the new policy to provide such amount payable for disability as the premium paid for this policy will purchase at the rates for such different occupation. The policy contains the further statement on its face: "The insured is by occupation *an owner and manager—Welding Company,* executive duties only, classified *preferred* by the company." In the case of *Pennington* v. *Pacific Mutual Life Insurance Co.*, 85 Iowa 468, the insured was a railroad fireman. The court there, under a provision in such policy agreeing to pay the insured a sum named per week "for the immediate, continuous and total loss of such business time as may result from" his injuries, held it to mean the total loss of time of the insured in the business of his particular occupation, and not that he should be disabled from doing any kind of business. The Court there, in referring to the *Lyons* case, *supra,* said: "We do not think that the clause of the policy above set out is so broad in its meaning as to defeat a recovery if plaintiff was able to do any kind of business. The whole policy must be examined to determine the question. * * * It is recited in the policy that the insured 'is by occupation local fireman under classification engineers.' The reference to 'the loss of such business time' has plain reference to the occupation of the insured, and the loss of time in such business means the loss of time in the business of a fireman. It has no reference to the whole range of business pursuits. * * * It will readily be seen that the limitation in the policy in the case at bar is not so comprehensive as in the cited *(Lyons)* case."

A fair construction of the policy in the instant case leads to but one conclusion, and that is that the company agreed to pay the indemnity noted therein in case the insured became unable to transact the duties pertaining to the occupation in which he was then engaged. The significance of the occupational feature of the policy is recognized in the letter of

Mr. Fontain, dated January 17th, heretofore referred to, which states: "If at any future time you should become continuously totally disabled and in such a physical condition as to be unable to perform any of the duties of your insuring occupation as manager of the Bluefield Welding Company * * * the company would be glad to re-open your claim and recognize liability in accordance with the contract provisions."

And now, having determined the policy to be an occupational one, to what extent must the insured be disabled in order to recover? The weight of authority supports the view that provisions in accident policies for indemnity in the event the insured is totally or wholly disabled do not require that the accident shall render the insured absolutely helpless, but such provisions are construed as meaning such a disability as rendered him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. 41 A. L. R. 1376; 37 A. L. R. 151; 24 A. L. R. 203; Joyce on Insurance, sec. 3031; Bacon on Life and Accident Insurance (4th Ed.) sec. 541. And an examination of the cases shows that the same rule applies in cases of disability caused by disease. *Metropolitan Life Insurance Co.* v. *Bovello,* 12 Fed. (2nd) 810. In the last mentioned case it is held that the total disability contemplated by a policy insuring against such disability by sickness means an inability to perform all the duties necessary to the practical prosecution of the vocation or business of the insured in substantially his customary and usual manner, disregarding all trivial acts which are not material to the prosecution thereof, but which are merely incident thereto.

Does Hetzel's policy fall under the rule heretofore stated; or, in order to recover, must the insured be so disabled that he cannot render or perform any service of any kind and character? We note from an examination of the policy that it contains a clause: "Should the assured suffer, as a direct result of such injury or such sickness, the loss of both entire hands by complete severance at or above the wrist, or the loss of one entire foot by complete severance at or above the ankles, or the loss of an entire hand by complete severance

at or above the wrist, and one entire foot by complete sever-
ance at or above the ankle, or the irrecoverable loss of the
entire sight of both eyes, he shall be deemed to have sustained
a permanent disability resulting in continuous, necessary and
total loss of all business time and the company will pay indem-
nity at the rate per month specified in paragraph (1) of part
A as long as he shall live.'' The loss defined in this clause of
the policy is therefore analagous to the one sued on. The loss
defined above may not prevent the insured from performing
even gainful occupations, still the disabilities are placed on
a parity by the company with the disability defined in the
clause in dispute. (Paragraph (1) of Part A.) So the
policy itself is a sufficient answer to the claim of the insurer
as to what the clause in dispute means.

The plaintiff, as heretofore stated, is suffering from
''Charcot-Marie, tooth form, muscular atrophy'' of the legs
(cause and cure unknown). His feet and legs below the knees
are so devoid of all feeling as a result thereof that needles
and pins can be jabbed into the flesh without any reaction
or feeling for a period of forty to fifty seconds. He is un-
able to sit or lie down for any length of time on account of
the pain caused by his affliction. Of a morning he must
massage his feet and legs for a considerable period of time,
and frequently must soak them in hot water before he is able
to stand alone, or as he terms it, ''gets his feet and legs go-
ing''. Sitting causes loss of feeling in his feet, and by reason
of this condition he is unable to tell when he is stepping at
the place he intends. Exposure of his limbs to the sunshine
daily and frequent massages with a stiff brush are prescribed.
Several physicians, including the local medical examiner, have
advised him to keep off his feet. As a result of this condition
he is unable to perform the duties of manager of the welding
company (of which he was sole owner and manager at the
time of the issuance of the policy), and has also disposed of a
half interest in the company.

After a careful examination of the record, we have con-
cluded that the evidence was sufficient to support the findings
of the jury upon the issue of total disability. It may be that

the defendant in error was physically able to perform some light labor, or to do some few things that would earn compensation; but that fact would not conclusively negative total disability within the meaning of his policy. Such provisions should be liberally construed in favor of the insured. There is a wide range between absolute physical helplessness and normal physical capacity to labor. It would be unreasonable to say that, in order to constitute total disability within the meaning of the policy, the insured must be unable to perform any small detail in pursuance of some remunerative employment. Such construction would in many cases render contracts of this character of little value to those who have them. We think it is sufficient if his present physical condition is such that he could not, in the exercise of ordinary prudence, perform any substantial part of the duties necessary to a practical prosecution of his business, or vocation, in substantially his customary and usual manner, disregarding all trivial acts which are not material to the prosecution thereof, but which are merely incidental thereto. He would not be expected to labor where he would be required to be on his feet.

Counsel for the insurance company make much of the fact that the plaintiff is now drawing a salary of $266.66 per month as chief deputy sheriff of Beaver Pond District, Mercer county. We find from the record that none of the salary represented in the two checks drawn by the county court of Mercer county in favor of the plaintiff, as deputy sheriff, was retained by him, but that each and every cent thereof was paid to S. F. Bowling, who was selected by the sheriff and the plaintiff to do the work of deputy until such time as it could be determined whether plaintiff would ever be able to assume the duties of deputy sheriff of Beaver Pond District. This appointment was made merely as a recognition of work which the plaintiff had done for the newly elected sheriff in the spring primary, and to carry out a pre-election promise made to the public by the sheriff. Whether or not such action is against public policy is not before the Court.

Consonant with the views hereinbefore expressed on the matters of law arising on this writ of error, we are of opinion

that the trial court did not err in the giving and refusal of instructions.

Perceiving no error in the judgment, the same must be affirmed.

*Affirmed.*