LAWRENCE L. LAUPHEIMER, RESPONDENT, v. MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, APPELLANT.

Kansas City Court of Appeals. February 17, 1930.

*Barnett & Hayes* for respondent.

*Montgomery & Rucker* for appellant.

ARNOLD, J.—This suit involves the proper construction of the total disability clause in a policy of life insurance. The facts of record are that defendant is a corporation, organized and existing under the laws of the State of Massachusetts, and authorized to transact business in the State of Missouri, in the selling and issuing of life insurance policies. Plaintiff is a resident of the city of Sedalia, Pettis county, Missouri.

In consideration of an annual premium of $327.80, defendant issued to plaintiff its policy of life insurance numbered 486740, under which plaintiff's life was insured for $10,000, so long as the annual premiums thereafter were paid. In addition to the usual standard provisions of life insurance, the policy insuring the life of plaintiff contained assurances of certain benefits to plaintiff during his lifetime, as follows:

"If the insured, after the payment of premiums for the first policy year, and before default in the payment of any subsequent year's premium, and before attaining the age of sixty-five years, shall furnish due proof to the company at its home office that he has become wholly and permanently disabled so that he is and will be permanently, continuously, and wholly prevented thereby from performing any work, or engaging in any occupation, for compensation or profit, and that such disability has existed continuously for not less than sixty days, the company will

"(1) waive the payment of all premiums becoming due under this policy after the expiration of the then current policy year; and

"(2) pay, *six months after receipt of proof of such disability*, to the insured if then living and such disability shall continue, one per cent of the face of the policy, exclusive of any paid-up additions, and a like amount each month thereafter during the continuance of said total disability of the insured prior to the maturity of the policy."

(The clause in Italics was deleted by defendant before the execution of the policy by drawing a line through these words.) Following the language above quoted, there was a provision that notwithstanding the proof of disability may have been accepted by the company as satisfactory, the insurer could at any time demand proof of the continuance of such disability, and if insured failed to furnish such proof, premiums thereafter falling due, must be paid and annuity payments cease. The last clause is followed by one providing that the loss of the sight of both eyes and certain other specified injuries should be considered as a total and permanent disability. It appears an additional premium of $29.20 was required by the insurer which, however, was included in the total premium charged for the policy.

When the policy was issued the assured was thirty-nine years of age and was engaged, and for a number of years had been engaged

as a dealer in hides and wool at Sedalia, Missouri, being senior member of the firm of Laupheimer & Hirsch. Testimony in behalf of plaintiff shows that about January 1, 1927, the insured suffered a nervous breakdown; that his condition grew worse, and in the early part of February of that year, it became necessary for him to dispose of his interest in said partnership and retire from the business; that he ceased to attend to business about February 15, 1927, though the contract of sale of his business was not executed until March 12, 1927.

On sustaining the nervous breakdown, insured consulted a Dr. Dyer of Sedalia and from and after February 15, 1927, insured was wholly disabled from transacting any useful business and thereafter was under the care of various doctors. The testimony shows Dr. Dyer advised plaintiff to leave Sedalia in the hope of benefiting his health. Dr. Dyer diagnosed the case eas a mania, a depressive form of mental disturbance bordering on insanity. In April, 1927, plaintiff went to Dallas, Texas where he was under the care of a physician and in a hospital for sixteen days; that about April 24th he left this hospital and a few days later, in care of a nurse, he went to Los Angeles, California, and placed himself in the care of a physician for about five weeks. On about June 10th of that year, plaintiff returned to Sedalia and again was under the care of Dr. Dyer who had him confined in a hospital for two weeks. Then in August of the same year, plaintiff went to Denver, Colorado, where he remained for seven weeks under the care of a physician and then returned to Sedalia and was again under the care of Dr. Dyer.

Testifying for plaintiff, Dr. Dyer said plaintiff's mind became seriously affected about the middle of February, 1927, due to worry over business reverses; that, as part of his treatment he advised plaintiff to go away from Sedalia; that plaintiff's condition was such that he did not know what he was doing, and that he attempted suicide on two or three occasions and the doctor was compelled to place him in a hospital in charge of a nurse; that this condition existed from the middle of February, 1927, until in March, 1928; that after witness and two other physicians had a consultation on the case, he told plaintiff they could do no more for him and that he should go to a sanitarium and stay until he got well; that he thereupon discharged plaintiff as a patient, for the reason given. Dr. Dyer further testified that as a part of his treatment of plaintiff he advised him to go into business of some sort; that he had to be gotten into business or go to an asylum; that this was a part of his treatment; that it was necessary to give plaintiff nerve sedatives to relieve his pain and induce rest.

It is in evidence that about November 19, 1927, plaintiff, on advice of his physicians, purchased a small grocery store in Sedalia and continued as owner thereof until March, 1928; negotiations for the

purchase of the store were carried on by one Sam Milton, and management and control of the store were entrusted to one Landon Welch; that during the entire time plaintiff owned the grocery store, he would go there about three days in the week and remain from thirty minutes to two hours on these visits; that plaintiff transacted none of the business connected with the store except to sign checks for bills approved by Welch; occasionally he would attempt to take an order over the telephone, or try to wait on a customer, but would be unable to complete such tasks; that plaintiff sold the store, the details of the deal being conducted by Welch. Between March 1, 1928, and June 1st of the same year, plaintiff remained in the same mental condition, and during that period, did not attempt to engage in any business.

After June 1, 1928, under his physician's orders, plaintiff attempted to sell stocks and bonds for a period of sixty days, for three or four hours a day; that during this period plaintiff's mental condition was not improved. From August 1, 1928, to October 8th of the same year, plaintiff did not attempt to engage in any business, but about the middle of October, 1928, his condition was such as to enable him to attend to some substantial matters of business; but at the time of the trial the evidence shows plaintiff had not fully recovered, he did not claim to have been totally disabled after the middle of October, 1928.

The testimony further shows that at some time during the period for which plaintiff claims total disability, he went to Indianapolis, Indiana, to find employment or suitable business in which he might engage; that he became so ill there that he had to be sent home.

On September 8, 1928, plaintiff notified defendant by letter that he was totally disabled from a nervous breakdown, and requested defendant to advise him of the proper action to take to recover under his policy. In this letter plaintiff stated he was disabled from February, 1926, until November, 1927. Plaintiff testified that the dates mentioned in said letter were put down by mistake and that he afterwards wrote defendant that a mistake had been made and the dates were February, 1927, to November, 1928, being the period of his total disability. It appears plaintiff had policies with other companies and in notifying them the same mistake was made and afterwards similarly corrected.

In answer to plaintiff's letter of September 8th, defendant wrote plaintiff on September 21, 1928, denying liability on the sole ground that his policy did not cover the liability claimed; that his disability was temporary; and the fact that he had recovered sufficiently to resume work relieved the company of liability, and payment was refused. There is no evidence tending to show that payment was refused because plaintiff had not furnished proof of loss; neither did defendant attempt to show plaintiff was not con-

tinuously incapacitated during the entire period for which claim was made.

The only witness offered by defendant was Mr. Scott, manag of defendant's city office, who testified that no letter correcting the dates in plaintiff's letter of notification of claim was received in his office; but that someone in the home office at Springfield, Massachusetts, had told him such letter had been received there, the witness remarking "that is purely hearsay."

During the course of the trial plaintiff attempted to amend his petition by substituting the words "has waived proof of such disability," but the record shows the court refused such amendment. Defendant's answer was a general denial. Defendant attempted to avail itself of the defense that proper proofs had not been furnished. Plaintiff objected to this upon the ground that such matter should have been affirmatively pleaded and the objection was overruled.

The verdict was for plaintiff in the sum of $2672.75, of which total sum the award was for $2000.15 at the rate of $100 per month for the period claimed, and $655.60, the amount of the premiums paid during the alleged period of total disability, amounting to twenty months and two days from February 15, 1927, to October 17, 1928.

A timely motion for a new trial was ineffectual and defendant has appealed.

There are three assignments of error: (1) That the court erred in refusing defendant's instruction in the nature of a demurrer at the close of plaintiff's case; and (2) in refusing a similar instruction at the close of all the evidence; (3) "in giving plaintiff's instruction No. 1, because the instruction authorized the jury to return a verdict for respondent without finding the respondent was wholly, totally, continuously and permanently disabled, and because said instruction authorized the jury to return a verdict for respondent without finding that respondent had submitted due proof to the home office of total disability."

A ruling on assignment No. 3, will embrace also a ruling on those numbered 1 and 2, and we shall proceed to consider the charge of error in assignment 3. It is defendant's contention that the word "permanent" as used in the policy means disabled for the remainder of the life of the insured; and that to permit recovery in this case where it is admitted the disability was not permanent is to require the insurance company to pay the claim on the theory that the policy involved was a health policy. Defendant contends that recovery may be had herein in no event unless the disability continued for sixty days; that the presumption arises that such disability will be permanent, and if due proof is submitted the company will be required to pay, under the disability clause, so long as such disability continues. Defendant, in its brief, urges that while it is true the

disability, in fact, may not be permanent, its duration for sixty days meets the requirements of the contract.

It is plaintiff's contention that an analysis of the entire disability clause discloses that the construction thereof contended for by plaintiff, and as found by the jury, to-wit, that plaintiff was wholly, continuously and permanently incapacitated from February 15, 1927, until October 17, 1928, is the proper construction; and that plaintiff was properly permitted to recover $100 per month for the period and also a return of the premiums paid during that time, in the amount of $655.60. The determination of this appeal is thus narrowed down to the proper construction to be placed on the word "permanent" as applied to the contract herein.

In the construction of contracts, the rule is the entire contract must be taken into consideration and its meaning determined from its four corners. The disability clause above quoted, it is observed, provides that if the insured, before default and before attaining the age of sixty-five years shall furnish proof that he was wholly, permanently and continuously disabled and was prevented thereby from engaging in any occupation for profit, and that such disability, existing continuously for not less than sixty days, the company will waive the payment of premiums and pay the assured $100 per month during the continuance of said total disability. It is further provided that notwithstanding proof of disability had been accepted by the company, if, on demand, the insured failed to furnish due proof of the continuance of such disability, then in that event, the insured would be required to pay the premiums, and the monthly payments would cease.

It occurs to us that the clear meaning of this clause is that if the insured was totally and continuously disabled for a period of sixty days, then there arose such disability as would require defendant to pay plaintiff indemnity, whether for months or years, or for life. The clause provides if such disability ceases to exist, defendant is relieved from making further payments. This fact, of itself, shows that defendant recognized the disability against which it insured might not last for life. Paragraph 2 of the disability clause supports this position in that it says, "if such disability shall continue" . . . "and a like amount each month thereafter during the continuance of said total disability of the insured prior to the maturity of the policy." These clauses by fair intent may be construed to mean that defendant contracted to pay for said disability so long as it existed. These clauses must be given their full meaning and the language used to limit or restrict the meaning must also be considered in the construction of the policy. The fact that the word "permanent" is used in the first part of the indemnity clause is so modified by the language following, that the intent is fairly established. If the clause had stopped at the word "perma-

nent" and no modifying or qualifying phrases used thereafter, defendant's position would be good. If the insurer had intended that the word "permanent" meant for life, it would have been an easy matter to have so worded the policy. It follows that if the indemnity clause means the insured must be disabled for life, then plaintiff would not be entitled to indemnity until his death.

Plaintiff contends the word "permanent" should not be given the restricted meaning urged by defendant, but that it must be given the meaning placed upon the word in ordinary usage, and that—

"When people say that Mr. A. is permanently located in Sedalia, they do not mean that he will be here the rest of his life. Nor, when we speak of a man as having a permanent position, it is not understood that his position will be everlasting. Nor do the words 'permanent structure' imply that they shall be everlasting, and when the hairdressers sell 'a permanent wave,' they do not imply that it shall last for life or be everlasting. The word 'permanent' therefore, as used in this policy, must be given the same reasonable interpretation."

The solution of this question is a matter of first impression in the State of Missouri, and we have not, therefore, a precedent in this State. The construction suggested above, however, has the approval of the appellate courts in other States. [Insurance Co. v. Milton, 127 S. E. (Ga.) 140.] The Milton case is practically on all fours with this case. The clause "six months after the receipt of due proof," present in the Milton case was deleted from the policy in the case at bar. The court in that case said:

"This language clearly indicates that the insurer meant that the total disability, on proof of which it would grant the benefits named, was not one which might last during the entire life of the insured, but one which might end prior to his death. So we are of the opinion that under the terms of his policy a total disability which lasted for sixteen months was a 'permanent disability' in the meaning of the above provisions of this policy."

This opinion was rendered by the Supreme Court of Georgia, after a request made by the Georgia Court of Appeals for instructions on the very point here in issue. Defendant herein, in support of its contention, cites the case of Insurance Co. v. Milton, 127 S. E. 798, where in an opinion written by the Court of Appeals, subsequent to the one written by the Supreme Court of Georgia, just cited, it was held the plaintiff could not recover because of defects in the petition. That opinion, therefore, does not apply here. Other cases cited by plaintiff upholding his position in this respect are: Eastep v. Ins. Co., 208 N. W. (Neb.) 632; Wenstrom v. Ins. Co., 215 N. W. 93; Insurance Co. v. Lewis, 183 Pac. 975; State ex rel. v. Allen, 267 S. W. 379.

Defendant cites Ginell v. Life Ins. Co., 200 N. Y. S. 261. This case as well as others cited by defendant would seem to uphold its side of the controversy. We quote from the Ginell case as follows:

"If the word 'permanent' in the policy has any natural meaning at all, there was no proof furnished of a total permanent disability. Each doctor said he would recover, and one of the physicians named the time about one year with accuracy; the other named a longer period than was required for recovery. One physician said plaintiff was not suffering from a total permanent disability; the other said he was, but stated the time within which he would probably recover. How can this evidence be held to furnish proof of total permanent disability, without which proof the benefits are not to be enjoyed? The physician's statement that plaintiff was suffering from a permanent disability is but his construction of the contract, not his opinion of plaintiff's condition."

There are two lines of cases cited, one of which supports defendant and the other plaintiff. However, it is clear the weight of authority in the well reasoned cases supports plaintiff in his position. Moreover, in our opinion, if the word "permanent" as used in the policy is accepted in the restricted sense urged by defendant, the modifying clauses following therein are either meaningless or they render the disability clause ambiguous. In that situation the construction to be applied must be the one most favorable to the plaintiff. [State ex rel. v. Allen, supra; Block v. Guaranty Co., 290 S. W. 429; Stix v. Indemnity Co., 175 Mo. App. 171, 157 S. W. 870; Mathews v. Woodmen, 236 Mo. 326, 139 S. W. 151.]

What has been said herein determines against defendant's contention all points raised in the appeal. The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.