## National Life & Accident Ins. Co. v. Bradley.

(Decided October 18, 1932.)

C. E. RANKIN for appellant.

WM. S. SANDIFER, Jr., and E. W. DRAFFEN for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

By its insurance policy issued to the appellee, Thomas N. Bradley, the appellant covenanted to pay him $7 a week "for each day that the insured is by reason of accidental injury, of which there is external evidence, disabled from performing work of any nature, provided such disability is not less than four consecutive days and a certificate of a duly licensed and practicing physician is furnished as hereinafter provided. The total number of days for which benefits will be paid under this policy is limited to One Hundred and

Forty (140) during any twelve consecutive months.''

It was further stipulated:

> ''The insured shall not be entitled to any benefits for sickness or accident under this Policy unless a certificate on the Company's form by a regularly licensed and practicing physician who is satisfactory to the Company, showing the nature of the sickness or injury, shall first be furnished the Company or its authorized agents; and if the sickness or accidental disability of the insured shall continue for more than one week, a like certificate must likewise be furnished at the beginning of each week of sickness or accidental disability. No liability for sickness or accidental disability shall begin to accrue under this Policy for any week until such certificate is received as above set forth; provided, however, that certificates received within two days following the visit of the physician will be dated for payment to correspond with such visit. The Company will not accept as proof of sickness the certificate of a physician who has not actually attended the insured at his bedside and there must be an actual attendance for every certificate filed.''

The insured had his leg broken in two places between the knee and ankle in December, 1923, by a gasoline engine falling upon him. The stipulated certificates of injury were filed and the company paid indemnity for three years, until December 18, 1926, when it took the position that Bradley was no longer ''disabled from performing work of any nature.'' Early in 1931 Bradley sued for the unpaid indemnities of $120 a year for three years. The petition alleged the plaintiff's disability in the language of the policy, and averred that he had furnished certificates during 1927, and was notified by the company's agent that no further ones were necessary, and by reason thereof none was furnished. The answer put in issue the disability of the plaintiff and the liability of the company. It traversed the allegation that it had denied liability and had given notice that no further certificates were necessary. It also pleaded that the plaintiff's condition was caused by a willful refusal to permit proper and efficient medical treatment.

Judgment having gone in favor of the plaintiff for

$560, the company claims the right to a reversal because it was entitled to a peremptory instruction based upon failure to prove that the nature and extent of the disability was as prescribed in the policy and the failure of Bradley to furnish the weekly certificates of his condition, and because of the failure of the court to give an instruction under the plea that his condition was due to his own neglect in the treatment of his injuries.

The plaintiff testified that after three years the company's agents refused to supply him with blank certificates so that he could make the necessary proof. The contract provided that they were to be "on the company's forms." He also testified that the reason assigned for refusing him those forms was that he was able to go to work. However, it seems he did secure and send in some certificates after 1926, but they were not recognized. This and other evidence not necessary to relate was in no way controverted. It abundantly proves a denial of liability and a waiver of the terms respecting proof of disability. Wortham v. Illinois Life Insurance Company, 107 S. W. 276, 32 Ky. Law Rep. 827; Ætna Life Insurance Company v. Bethel, 140 Ky. 609, 131 S. W. 523; Continental Insurance Company v. Turner, 222 Ky. 608, 1 S. W. (2d) 1063.

The appellee was at the time of the trial forty-eight years of age and weighed 240 pounds. The upper fracture of the leg had apparently healed, but in the lower one the bones had become lapped, and only an adhesion held them together. The result is a considerable shortening of that leg and such weakness as absolutely requires constant use of crutches. Because of his weight, the extraordinary demand upon his sound leg has caused it to become swollen and sore; and this condition hinders him in going about. Before receiving the injury, seven and one-half years before, he had been strong and able-bodied. He had done much manual labor in and about his farm, such as a hard-working, industrious farmer is required to do. Afterward he could only oversee his place and supervise the work of his farm hands and tenants. He rode horseback, but mounted and dismounted with difficulty. Likewise he could and did ride in buggies and automobiles, and sometimes he took his produce to market. For a time he was county road overseer, and, while the appellant emphasizes this capacity to work, it appears that his supervision required only a few hours a day for a short

period, and that he performed his duties by going about on horseback. His physician, under whose care he has been since receiving the injury, and his neighbors, testified that he is incapacitated from doing any kind of farm labor and work of any sort other than that related.

The term "disabled from performing work of any nature" is not to be construed strictly or literally. Continental Casualty Company v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079; Henderson v. Continental Casualty Company, 239 Ky. 93, 39 S. W. (2d) 209.

We have had occasion recently to consider the proper interpretation to be given insuring clauses providing in their essence for indemnity for total disability. Henderson v. Continental Casualty Company, supra; Mutual Life Insurance Company v. Wheatley, 243 Ky. 69, 47 S. W. (2d) 961. In the former opinion domestic and foreign authorities are reviewed, and the decision announced in National Life & Accident Insurance Company v. O'Brien's Executrix, 155 Ky. 498, 159 S. W. 1134, 1136, to follow those courts giving such terms a broad meaning was adhered to . That interpretation is expressed in this language:

"While the language of the policy here is that the disability, entitling the assured to the indemnity provided, must be so total as to prevent him from 'performing every duty to any business or occupation,' it would do no violence to the language used or the rights of appellant to say that the words quoted, fairly interpreted, should be held to mean that disability would be total, if of such a character as to prevent the assured from transacting any kind of business pertaining to his occupation. In other words, it is sufficient if the disability of the insured in this case was such as to prevent him from doing all the substantial acts required of him in his business."

The Henderson Case is susceptible of being distinguished from that before us, in that the policy insured Henderson "as a freight brakeman," and his affliction was color blindness, which prevented him continuing in that occupation, but in no way incapacitating him from other employment not calling for a sense of color on his part, while here no occupation is designated and no particular classification was made, the

policy merely insuring the man. But the insuring clause was substantially the same. It provided indemnity should the insured "be wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation by reason of illness." That clause was construed in the light of reason and precedent to mean "if the insured was unable to follow his usual occupation, although he might be able to do something else."

Of closer application is Ohio National Life Insurance Company v. Stagner, 231 Ky. 275, 21 S. W. (2d) 289, 290. A farmer contracted pellagra, which disabled him from carrying on his occupation. The policy provided indemnity if by reason of disease he should become "wholly prevented for life from pursuing any and all gainful occupations." He was permitted to recover, although he was able to do some work but not such as he had done before his illness, and which it was shown he could no longer do. The opinion cites and quotes other cases of the same character which need not be again reviewed.

While the appellee is not disabled from performing work of any nature, strictly speaking, he is disabled from performing in a substantial way the things he had been previously able to do, and is disabled in a very material degree from carrying on his business and sole occupation, that of a farmer. The court submitted this issue to the jury under an instruction which defined the term according to the interpretation given it by the opinion of this court. Under the evidence it cannot be said that a directed verdict for the defendant should have been given.

On the issue as to whether the plaintiff's condition was due to his willful neglect, the evidence was in substance that, when the doctors set his leg at the time it was broken in 1923, they did the best they could under the circumstances, but were not able to bring the bones in position in both places by plates and screws, which they say is the best way where there is a double fracture, because the patient rejected their advice and refused to be taken to a hospital or an X-ray machine. There is nothing to show that a complete recovery would have been had had the patient followed the doctors' advice, except the opinion of the doctors that better results would likely have been obtained. Perhaps this evidence was sufficient to authorize the sub-

mission of the issue to the jury, but the defendant did not offer an instruction upon the point. The fact that the instructions given were upon the court's own motion is immaterial, for it is well established that it is not the duty of the court in a civil action to give the jury the whole law of the case or to instruct on any point unless requested to do so by one of the parties to the action. If the instructions given are not as the litigant desires, he should ask for an instruction on the issues he wishes submitted. Asher v. Metcalf, 152 Ky. 632, 153 S. W. 987; Kaufman v. Jean, 189 Ky. 511, 225 S. W. 239.

Wherefore the judgment is affirmed.