## Aetna Life Insurance Co. v. Wyant.

(Decided June 2, 1933.)

GRANNIS BACH and CRAWFORD, MIDDLETON & MILNER for appellant.

KASH C. WILLIAMS, LEEBERN ALLEN, J. C. LINDON and G. C. ALLEN for appellee.

Opinion of the Court by Judge Thomas—Affirming.

Prior to, during, and following the year 1920, John A. Wyant, the deceased husband of the appellee and plaintiff below, Mida Wyant, was in the employ of the Cumberland Pipe Line Company as a carpenter. In January of that year his employer procured from the appellant and defendant below, Ætna Life Insurance Company, a master insurance policy, insuring the lives of its employees in the sum of $500 each with certain rights and privileges whereby the insurance could be increased, and later it was done to the amount of $1,000. The policy also provided that each employee by complying with certain provisions in the policy could take additional insurance on his life, and which could be annually increased until it reached the sum of $1,000, and which Wyant did, thus making the total amount of his policies the sum of $2,000.

Wyant was a faithful, competent, and efficient laborer, and in perfect health so far as this record discloses, until a short time preceding January, 1925, when symptoms of appendicitis developed, and at that time it had become so advanced as to require an immediate operation. He was carried to a hospital at Winchester, Ky., where the operation was performed; but the physicians who did it discovered that the appendix had ruptured and the operation was followed by peritonitis, resulting in confining the patient in the hospital for several weeks. The incision did not heal and conditions soon developed requiring a reopening of it and the insertion therein of a draining tube, which was kept installed for a considerable time; but after its removal the wound continued to be kept open for the elimination of pus, although for short intervals the aperture would

heal over to be followed by another incision to let out the accumulated pus. Such condition continued until August, 1927, at which time he was found, on inquisition, to be a person of unsound mind and was placed in the State Insane Asylum at Lexington, Ky., where he died, without ever being restored, on September 21, 1927.

Plaintiff was the beneficiary in the insurance policies above referred to, and she filed this action in the Wolfe circuit court against defendant to recover their face value, although the policies were canceled some eighteen months before the insured's death for failure to pay the premiums; it not being continued by the employer from and after some eight months following the appendicitis operation. The policies contained these stipulations: "If total disability of any employee entitled to insurance under the schedule of insurance contained in this policy begin before age sixty, and if due proof be furnished the Company after such disability has existed for a period of six months, and if such disability presumably will during lifetime prevent such employee from pursuing any occupation for wages or profit, such employee shall be deemed to be totally and permanently disabled within the meaning of this policy. * * * Upon receipt of due proof of the Home Office of the Company of the total and permanent disability of any employe entitled to insurance under the schedule of insurance contained in this policy, the Company will waive further payment of premium for the insurance upon the life of such disabled employe and will pay immediately disability benefits in lieu of all other benefits provided for under this policy."

Plaintiff, therefore, bottoms her cause of action upon the proposition that her husband (who was 46 years old at the time of his death), while the policies were in full force and effect, became permanently disabled within the terms of the inserted provisions of them and, because of that fact, the defendant, therein and thereby, waived "further payment of premium for the insurance upon the life" of her husband during such total disability, and that if he died without recovery therefrom the insurance was effective and collectable. The substance of the defense was a denial of that contention, but which in its essence was and is a denial of Wyant's total disability within the contemplation of the inserted terms of the policies, and that was the only

issue tried in the court below. The court submitted to the jury only that issue and directed it to return a verdict for plaintiff if it believed from the evidence that the insured became totally disabled as set forth in the policies while they were in full force and effect, and from which he later died, but unless it so believed a verdict should be returned for defendant. It found for plaintiff, and defendant prosecutes this appeal from that verdict and from the judgment pronounced thereon.

As grounds for reversal, counsel for defendant argue a number of alleged errors committed during the trial, chief among which is that their client was entitled to a peremptory instruction, since, as they contend, the testimony fails to establish such total disability of the insured as was contemplated by the policies. But, if mistaken in that, then they argue that the verdict of the jury so finding is flagrantly against the evidence. No objection is made concerning the instructions given by the court to the jury, nor of any that was refused; the defendant not offering any, except a peremptory one to find for it. Some criticism is made in brief of counsel of certain testimony given by layman witnesses introduced by plaintiff as to the physical conditon of the insured following his appendicitis operation and extending up to the time of his lunacy inquest and incarceration in the Eastern Kentucky Insane Asylum; but we are not inclined to regard that testimony as erroneous, since the witnesses were associates of the insured and had ample opportunity to observe his outward physical condition, as well as the effects of his ailment thereon, and we have frequently held such testimony to be competent. Sovereign Camp, Woodmen of the World, v. Morris, 212 Ky. 201, 278 S. W. 554; North American Accident Insurance Co. v. Caskey's Adm'r, 218 Ky. 750, 292 S. W. 297, and others cited in those opinions.

It is true that we held therein, as well as in the case of Cincinnati, New Orleans & T. P. Railroad Co. v. Ross, 219 Ky. 824, 294 S. W. 460, that laymen, although associated with the one about whom the testimony was given, may not express an expert opinion concerning the existence of facts not open to their observation and which are obtainable only through scientific and expert knowledge; but the testimony complained of in this case was almost chiefly, if not entirely, of the former char-

acter, and there was an abundance of professional testimony sustaining the verdict of the jury.

But defendant further contends that such testimony was in the face of the physical facts and from which it is argued that the verdict was flagrantly against the evidence and should be set aside for that reason, even though defendant was not entitled to the tendered peremptory instruction in its favor. That contention calls for a brief statement of the condition of the insured and of his acts and conduct between the time of his operation and of his incarceration in the asylum. After the first partial healing of the incision of the operating physician, deceased wrote his employer that he was very much improved and thought that he would be able to resume work by the 15th of May (1925). However he was unable to do so by that time, but he did later accept a job of painting for his employer, at which he worked some two or three weeks; but he was continually complaining during that time and suffering from his suppurating wound. Still later he undertook to perform some carpentering work for his employer, but after a short while he was unable to continue for the same reason. He then went with his brother-in-law to Florida where he remained for something like six months; but on each occasion when he undertook to perform any physical labor he was compelled to cease it for the same reason. He assisted in driving an automobile on the trip to Florida, and also drove it on his return trip; but during both of them he was still suffering from the incision in his side, so made by the operation, and which never permanently healed, nor was he ever healed internally.

Following his return from Florida and with commendable determination and bravery he again undertook to perform some carpenter's work on a public school building at Jackson, Ky., and also again at Ravenna, Ky., he undertook to work at his usual calling; but on each occasion he was compelled to desist, and his associates in testifying in the case make it clearly apparent that upon each and every occasion that he undertook to perform labor it was done from the force of absolute necessity as well as at his peril, and that but for such necessity no such efforts would have been made by him. The professional testimony in the case practically without contradiction, sustains such statements. There

was also testimony that at some time during the period referred to the insured did some clerical work in the office of the circuit court clerk of Wolfe county and, perhaps, collected some school or municipal taxes, but every one who knew him, including his physician who attended him weekly throughout that period, stated that he was a completely disabled man.

In the case of Equitable Life Assurance Society v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703, 704, we had under consideration provisions of a life insurance policy almost identical in phraseology with the ones here involved, and the facts with reference to the total disability of the insured were very similar in the two cases. We held therein that ''total disability'' within the meaning of such provisions in insurance policies does not mean ''absolute helplessness or entire physical disability,'' and that ''such a narrow construction is entirely out of harmony with decisions of this court. Henderson v. Continental Casualty Co., 239 Ky. 93, 39 S. W. (2d) 209, and cases therein cited; John Hancock Mutual Life Ins. Co. v. Cave, 240 Ky. 56, 40 S. W. (2d) 1004 [79 A. L. R. 848].'' See, also, the cases of Continental Casualty Co. v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079; Provident Life & Accident Co. v. Harris, 234 Ky. 358, 28 S. W. (2d) 40, and Travelers' Insurance Co. v. Turner, 239 Ky. 191, 39 S. W. (2d) 216.'' Those cases, and others cited therein, construe such provisions to mean that the disability provided for therein is ''total'' and complete when the insured is rendered unable ''to do and perform in a reasonable and practical way all material acts in the pursuit of the occupation or' employment of the insured,'' or, perhaps, in some cases, any other occupation for gain; and when that stage of disability is reached it is rendered of that degree and character indemnified against.

In this case the physical system of insured, according to the medical testimony, became poisoned because of the rupture of his appendix and the consequent peritonitis, and that poison was never eradicated but continued to increase by degrees until his brain became affected, producing mental dethronement, and from the results of which he eventually died. At any rate, there was an abundant amount of competent evidence to authorize the jury to so find, which it did. We, therefore, conclude not only that the court did not err in overrul-

ing the offered peremptory instruction by counsel for defendant, but also that the verdict of the jury in denying the defense we have discussed was not flagrantly against the evidence.

We are aware that claims of this nature are frequently asserted, and sometimes upheld by verdicts, when they are totally unfounded and are the result of fraud and collusion. But generally courts have but little trouble in detecting that character of case and to take such legal steps as may be necessary to prevent the consummation of the fraud. However, if in some cases the fraudulent scheme should be successful because of the artful and ingenious methods employed, it furnishes no ground for denying a claim as meritorious as this one is shown to be by the uncontradicted testimony of witnesses not discredited whose statements are in perfect accord with observation and experience, and with no fact or circumstance to impair its credibility.

No question is made about the insured waiving his right to collect total disability benefits during his lifetime, or the right of his widow, as beneficiary under the policies, to collect their proceeds as death benefits, and such questions are, therefore, not presented and for which reason they will not be determined.

Perceiving no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.