## Prudential Insurance Co. of America v. Harris.

(Decided April 24, 1934.)

24

R. W. KEENON, for appellant.
WAUGH & HOWERTON, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

On February 7, 1930, the appellant, Prudential Insurance Company of America, insured the life of the appellee, Harry Harris, in the sum of $5,000. The policy contained a total and permanent disability benefit clause, by which, in consideration of an extra premium, which was included in the payment of the total premium charged for the policy, the appellant agreed to pay to the appellee a monthly income of $10 for each $1,000 of the amount of insurance in the event of appellee's total and permanent disability before the age of 60. The provisions of the policy as to total and permanent disability are as follows:

> "If the insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he [or she] is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work of any kind for compensation of financial value during the remainder of his [or her] lifetime, and if such disability shall occur at any time after the payment of the first premium on this

policy, while this policy is in full force and effect and the insured is less than sixty years of age, and before any non-forfeiture provisions shall become operative, the company upon receipt of due proof of such disability, will grant the benefits hereinafter specified, dating from the commencement of such disability, or if the proof submitted shall not be due proof of the permanency of such disability but shall be due proof that total disability as defined exists and has existed continuously during a period of not less than ninety days immediately preceding receipts of such proof, such disability shall be presumed to be permanent and the company will grant the said benefits dating from the end of ninety days from the commencement of the period of total disability which has existed continuouly to the date of such proof.''

In another clause the company waived the payment of any premium or premiums which came due during such disability. The premium was payable in quarterly installments, and the appellee paid the installments from the date of the policy to February 7, 1931.

At the time the policy was issued, he was employed by the Chesapeake & Ohio Railway Company as a locomotive steam pipe fitter and had been so employed for approximately fifteen years. He quit work on November 9, 1930, and shortly thereafter furnished to the appellant proof of disability. The company paid him disability benefits at the rate of $50 a month from February 10, 1931, to July 10, 1931, when it ceased making the payments and denied any further liability, claiming that the appellee was not totally and permanently disabled within the meaning of the policy.

On February 2, 1932, Harris brought this suit in the Greenup circuit court, alleging that he became permanently and totally disabled on November 9, 1930, and that he had been wholly, continuously, and permanently unable to engage in any occupation or perform any work of any kind for any kind of compensation of financial value, that he was suffering with colitis accompanied by spastic diverticulosis, which had at all times since November 9, 1930, rendered him permanently and totally disabled within the meaning of the policy, and that such condition was permanent and that he would thereafter be wholly, continuously, and permanently unable to engage in occupation or perform any work for any kind of

compensation of financial value during the remainder of his life. He alleged seven monthly payments of $50 each had accrued since July 10, 1931, when appellant ceased the sick benefit payments, and he prayed for a judgment for $350 with interest on each $50 installment from the time it became due under the terms of the policy. He further prayed "that it be adjudged by the court that he is permanently and totally disabled within the meaning of said policy and that said payments shall continue at the rate of $50.00 per month so long as the plaintiff is so disabled." On the trial of the case the jury returned a verdict for the plaintiff and the following judgment was entered:

"It is therefore considered, ordered and adjudged that the plaintiff, Harry Harris, is totally and permanently disabled within the meaning of the policy sued on herein, and has been so disabled since July 10, 1931, and it is ordered and adjudged that he recover of the defendant the sum of $600.00 being the monthly installments due under said policy from the 10th day of July, 1931, until this date, and he will recover interest on said monthly installments as they became due from time to time since July 10, 1931, and his costs herein expended. This judgment is without prejudice to the future rights of the parties on the status of the plaintiff hereafter, under the provisions of said policy."

On this appeal the following grounds are relied upon for a reversal of the judgment: (1) The court erred in overruling defendant's motion for a directed verdict; (2) the instructions are erroneous; and (3) the judgment is erroneous and excessive in amount and unsupported by the pleadings.

Appellee testified that he was employed by the Chesapeake & Ohio Railway Company as a locomotive steam pipe fitter from June 14, 1914, to November 9, 1930, and that he stopped work on account of sickness. He began having intestinal trouble in October, 1930, and it had become so acute on November 9, 1930, that he was unable to work longer. He could eat very little and then only specially prepared food, and had lost considerable weight. His condition did not improve, and at the time of the trial in July, 1932, he was still unable to work. He was treated by Dr. C. M. Vaughan and Dr. C. E. Johnson. Dr. Vaughan testified that he ex-

amined appellee in November, 1930, and put him to bed for about six weeks. He described appellee's condition as follows:

"He has chronic colitis with a chronic infection of the ileum and of the mucous membrane with a distention of the different parts of the bowel that is like little pouches."

He further testified that the entire colon was affected, that the condition was permanent, and that the appellee would never be able to do manual labor. Dr. Johnson testified that appellee's condition was permanent and that he would never be able to perform hard labor. Dr. J. R. Cooper, who had been a specialist for fifteen years in X-ray diagnosis, made an X-ray examination of appellee in November, 1930, and again in November, 1931, the last time at the request of appellant. He described the condition he found in November, 1930, as follows:

"The condition revealed was that of a mucous or spastic colitis, that is, a contracted condition of the colon, which was found in this case to be extreme, that the muscle fiber contracted down, a narrowing of the ileum of the colon. I made an examination of the fiber which shows the extensive packing or false declivitous so that this food was cut off by spasms."

He found appellee in substantially the same condition in November, 1931, and in his opinion appellee's condition was permanent, or would become permanent, and he was unable to do any manual labor.

In its most favorable aspect to appellant, the general effect of all the evidence may be said to be that the insured was not disabled from performing some kind of work, but that he was not physically able to hold a regular job or do manual labor, or particularly to do the work of a pipe fitter, which was his usual vocation or accustomed occupation. There was substantial evidence to the contrary, but it was not so conclusive as to constrain this court to hold that the verdict, in accordance with the claims of the plaintiff, was flagrantly against the evidence under the terms of the policy as defined in the instructions.

The contention that the policy had lapsed because of the nonpayment of premiums rests upon the same ground, for, as stated, the company had agreed to waive

their payment during the continuance of such disability.

The general tenor and effect of the instructions offered by the plaintiff is that the jury should find for the insurance company unless they believed from the evidence that the plaintiff had been and was permanently disabled to such extent as to render him unable to engage in any work or employment of any kind for compensation of financial value even though he was unable to do the work of a pipe fitter. Those instructions were refused, but, in the instruction given by the court, the jury was required to find that the plaintiff was disabled substantially as defined and limited by the language of the policy. However, the court defined that language by this instruction:

> "The court instructs the jury that the words 'totally and permanently disabled to such an extent that he is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his life time' mean inability to do and perform in a reasonable and practical way all material acts in the pursuit of the occupation or employment of the insured, but do not mean absolutely helpless or entire physical disability."

The correctness of that instruction is the crucial question.

The case therefore presents for interpretation the phrase in the policy that indemnity would be paid if the insured should be rendered "wholly, continuously and permanently unable to engage in any occupation or perform any work of any kind for compensation of financial value during the remainder of his lifetime." The argument is made here, as it has recently been persistently made by other attorneys in cases of this character, that the meaning ascribed to such a provision by this court is not the proper one and is not in harmony with the decisions in other states. The court has therefore been led to give a full reconsideration of the subject.

Insurance of this nature readily falls into two general classes. One may be termed occupational and the other general. The former type of policy undertakes specifically to insure only against disability to transact the duties pertaining to or to perform labor in a particular

occupation, which is usually that in which the person insured is at the time or is customarily engaged. The other type undertakes to insure against disability from performing any sort of remunerative labor. The interpretation given both classes of insurance by this court has hitherto been substantially the same. That is, we regard the general insurance as in effect occupational insurance. We have construed the provision undertaking to limit the indemnity against disability to perform any kind of labor as contemplating an inability to do all the substantial and material acts necessary to the prosecution of the insured's business or that which is required of him in the performance of his occupation in the customary and usual manner.

Where the policy is of the occupational insurance type, the correctness of that definition is not doubtful. Among cases of that class are the following: Fidelity & Casualty Company v. Bynum, 221 Ky. 450, 298 S. W. 1080; Provident Life & Accident Insurance Company v. Harris, 234 Ky. 358, 28 S. W. (2d) 40; Benefit Association v. Secrest, 239 Ky. 400, 39 S. W. (2d) 682; John Hancock Mutual Life Insurance Company v. Cave, 240 Ky. 56, 40 S. W. (2d) 1004, 79 A. L. R. 848. There are many others, but these are sufficient for the purpose of this opinion.

Typical of the definitive clauses of total disability in what we term general insurance are these: "Which renders the insured unable to carry on or conduct any vocation or calling;" "from following any occupation whatever;" "from performing work of any nature;" and "from performing any work or following any occupation for compensation or profit." In construing such clauses the authorities are not in accord. They may be roughly divided into three groups. One gives a strict and literal meaning. The other extreme group gives a liberal interpretation, holding the definition to apply to the insured's occupation. The third is the qualified or intermediate construction. The decisions placing the courts in these respective classes are brought together in the annotations in 24 A. L. R. 203; 37 A. L. R. 151; 41 A. L. R. 1376; 51 A. L. R. 1048; and 79 A. L. R. 857. See, also, 1 C. J. 465; 14 R. C. L. 1315, and Supplement.

There are but few authorities supporting the extreme view that these provisions are literal and mean that the insured shall be rendered helpless. In our

opinion such a construction, requiring complete mental or physical inertia, would lead to absurdity, and would be equivalent to a practical denial of recovery of that which the premium was supposed to be buying. There would have to be a living death, where the insured could not even peddle pencils or peanuts on the street. It cannot be thought that either party to the contract con-templated such a condition of indemnity.

The intermediate group of authorities gives a more rational and practical construction, one that is consis-tent with fairness, and holds that such insuring phrases. mean a disability that prevents the insured from follow-ing any substantial or remunerative occupation, or from doing any labor for which he is fitted or qualified, mentally and physically, and by which he is able to earn a livelihood.

The decisions of this court readily place it in the second or liberal group mentioned above. The first case we have of this character is National Life & Accident Insurance Company v. O'Brien's Ex'x, 155 Ky. 498, 159 S. W. 1134. The court there construed the term in a policy which provided indemnity for injuries which "disabled and prevented the insured from performing every duty pertaining to any business or occupation." Regard was had for the authorities holding that such terms contemplate disability to earn a livelihood at any employment, but the conclusion was reached that we should follow another group of cases therein cited which held that total disability within the meaning of such terms exists if the injuries are of a character that pre-vents the insured from following his particular business or occupation, or an inability to do substantially all the material acts necessary to its prosecution in substan-tially his customary and usual manner, for such inter-pretation seemed to be more in accord with reason and justice. In reaching that conclusion, the court was fur-ther influenced by the general rule that, if the contract is susceptible to two constructions the one more favor-able to the insured should be adopted.

In Hagman v. Equitable Life Assurance Society, 214 Ky. 56, 282 S. W. 1112, the clause was, "unable to engage in any occupation of financial value." Injuries sustained in an accident were such that the insured was rendered physically unable to perform all the substan-tial acts or duties required of him in his business, and

it was adjudged that he had the right to recover the benefits provided in the policy.

In Ohio National Life Insurance Company v. Stagner, 231 Ky. 275, 21 S. W. (2d) 289, 290, the degree and character of disability insured against was that which would prevent the insured "from pursuing any and all gainful occupations." The evidence was directed to his inability to perform the material duties of his occupation as a farmer, and it was held sufficient to authorize a judgment in his favor.

The policy in Henderson v. Continental Casualty Company, 239 Ky. 93, 39 S. W. (2d) 209, insured one as a freight brakeman and provided indemnities for loss resulting from either accident or sickness. The insured was compelled to give up his employment because of color blindness coming upon him, but he was able to and did work in other occupations. The accident provision was for indemnity for disability from performing "each and every duty pertaining to his occupation," but the sickness provision was for disabilty which prevented the insured "from performing any and every duty pertaining to any business or occupation by reason of sickness." It was under the sickness clause that indemnity was sought. Observing that the court had steadily declined to construe such terms in their literal sense, and following the O'Brien Case and others (particularly a well-reasoned Missouri opinion which is quoted at length), it was held that the insured was entitled to recover indemnity under the sickness clause because his disability prevented him from following his occupation of a freight brakeman.

In National Life & Accident Insurance Company v. Bradley, 245 Ky. 311, 53 S. W. (2d) 701, the insurance was limited to disability "from performing work of any nature." The insured was a farmer, and his injuries were such as to materially interfere with the performance of his work in his sole occupation. This is a clear-cut case, not influenced as perhaps was the Henderson decision by the fact that the entire policy was susceptible of an intention to insure as a brakeman, wherein we affirmed the O'Brien Case as sound and followed it.

We also have a number of cases involving group insurance of employees. In some of those policies the terms were general like those under consideration. The same meaning was ascribed to them as in the foregoing

cases. But those policies are of a somewhat different type, for they can be quite readily regarded as a species of occupational insurance, since it is provided that they shall terminate when the employment ceases. These opinions, however, reflect the attitude of the court with respect to the construction to be given such terms. Equitable Life Assurance Company v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703, and Ætna Life Insurance Company v. Wyant, 249 Ky. 562, 61 S. W. (2d) 50, are typical of this class.

The following foreign cases support our interpretation of these clauses and give substantially the same meaning. In some of them there will be found more or less difference in the terms or in the facts, but in all of them a liberal view was taken and they held in effect that the disability pertained to the insured's customary occupation. Foglesong v. Modern Brotherhood, 121 Mo. App. 548, 97 S. W. 240; Jacobs v. Loyal Protective Insurance Company, 97 Vt. 516, 124 A. 848; Continental Casualty Company v. Wynne, 36 Okl. 325, 129 P. 16; Ozark Mutual Life Association v. Winchester, 116 Okl. 116, 243 P. 735; Metropolitan Life Insurance Company v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852; Great Northern Casualty Company v. McCollough (Ind. App.) 174 N. E. 103; Metropolitan Life Insurance Company v. Lambert, 157 Miss. 759, 128 So. 750; Laupheimer v. Mass. Mutual Life Insurance Company, 224 Mo. App. 1018, 24 S. W. (2d) 1058; Great Southern Life Insurance Company v. Johnson (Tex. Com. App.) 25 S. W. (2d) 1093; Wall v. Casualty Company, 111 Mo. App. 504, 86 S. W. 491; Katz v. Union Central Life Insurance Company, 226 Mo. App. 618, 44 S. W. (2d) 250; Pacific Mutual Life Insurance Company v. McCrary, 161 Tenn. 389, 32 S. W. (2d) 1052; Ætna Life Insurance Company v. Spencer, 182 Ark. 496, 32 S. W. (2d) 310; McCutchen v. Pacific Mutual Life Insurance Company, 153 S. C. 401, 151 S. E. 67; Brown v. Missouri State Life Insurance Company, 136 S. C. 90, 134 S. E. 224; Hetzel v. Pacific Mutual Life Insurance Company, 108 W. Va. 22, 150 S. E. 385; Maresh v. Peoria Life Insurance Company, 133 Kan. 191, 299 P. 934.

In construing a contract of insurance, the court undertakes to do so according to its true character and purpose and in the sense in which the insured had reason to suppose it was understood. Continental Casualty Company v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079.

There is reason for ascribing to these unqualified terms in what we have designated as general insurance the meaning that the disability should be such as prevents the insured from engaging in any remunerative occupation, or doing those things for which he is qualified by his education, training, and physical condition, rather than giving them the same meaning as in the so-called occupational insurance policies. The risk in the former is much greater and doubtless the premiums have been made commensurate with the risk. But at this time, with so many decisions to the contrary, we must have due regard for the doctrine of stare decisis. For twenty years and more this rule of construction has been consistently applied, and every insurance policy of this character issued in the state during that time has been with the knowledge that their terms would be so defined by the courts. If the insurance companies have not been altogether satisfied, we are aware of no reason why a more explicit limitation could not have been incorporated in the policies. We quite agree with this declaration in 14 R. C. L. 932:

> "It has been said, and no doubt is true, that uniformity of decision on questions of insurance in the several states is very desirable and necessary, and where an insurance company continues to issue policies without any modification of their terms, after certain provisions thereof have been judicially construed, it should not be heard to insist, in controversies between itself and the insured with respect to such subsequently issued policies, that they do not in fact cover risks which they had been adjudged to cover before they were issued. While it may not be accurate to say that under such circumstances a technical estoppel arises in favor of the insured, yet the courts in such cases should rigidly enforce the rule requiring policies of insurance to be construed most strongly against the insurer."

So it may logically be said that the contracts have been entered into with the understanding by both parties that their legal meaning is as indicated. It is not merely the age of a rule nor the frequency of its application that gives stability, for error is not less error because it has perhaps become gray with the years or smooth with use. But, when contracts have been made under the authority of a consistent judicial course of

construction, it should be a very compelling situation that would warrant a change which would adversely affect rights acquired under that policy. Without determining which of the two lines of authorities we would join were the question an original one—whether the intermediate or extremely liberal group—the court has come to the conclusion that it should adhere to its former decisions interpreting such definitive clauses in insurance policies.

Another point to be noticed before closing the opinion is that it was error to fix the period of disability as having begun November 9, 1930, inasmuch as the petition sought recovery only from July 10, 1931, and the evidence was directed to his condition subsequent to that date. We can perceive no harm to the defendant in this. Plaintiff was made to carry a burden not required. The company had admitted that the insured was disabled within the meaning of the policy during the period from November 9, 1930, to July 10, 1931. This point must therefore be disallowed.

It was not error to adjudge on the verdict that the insured was entitled to all monthly indemnities up to the date of the judgment, as appellant contends. The petition sought to have it adjudged that the plaintiff had been, was then, and would be permanently and totally disabled and entitled to the benefits of his insurance so long as he should continue in that condition. But the judgment did not award any future benefits, which would have been proper under our recent opinions. Equitable Life Assurance Society v. Branham, 250 Ky. 472, 63 S. W. (2d) 498; and Equitable Life Assurance Society v. Preston, 253 Ky. 459, 70 S. W. (2d) 18.

The judgment is affirmed.

Whole court sitting.

Rees, C. J., and Thomas, J., dissent from so much of the opinion as holds the instruction defining "total disability" under the terms of the policy involved to be correct, as they are of the opinion that the O'Brien Case is unsound and that the term in this policy should be construed as meaning a disability which prevents the insured from following any substantial or remunerative occupation, or from doing any labor for which he is fitted or qualified, mentally and physically, and by which he is able to earn a livelihood.