## Bankers' Life Company v. Green.

(Decided Oct. 30, 1934.)

BRUCE & BULLITT for appellant.

L. B. ALEXANDER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

On March 4, 1931, the Bankers' Life Company of Des Moines, Iowa, issued to Leonard J. Green a life insurance policy for $5,000. The policy contained an agreement that the company would, upon proper proof, waive future payment of premiums and would pay to the insured $50 per month in the event he "becomes totally disabled by reason of bodily injury or disease originating after the date, hereof, and is thereby wholly and continuously prevented from performing any work or engaging in any occupation whatsoever for remuneration or profit."

On June 8, 1931, while working in the capacity of car inspector for the Illinois Central Railroad Company, at its yards in Paducah, Ky., the wheels of a car ran over and so completely crushed insured's left hand that it had to be amputated, leaving, as he expressed it, "a stub 7 inches below the elbow." He made due proof of his injury and resultant disability, and the company paid him the sum of $50 per month for the months of June, July, August, and September of 1931, but thereafter refused to make any further payment.

On July 18, 1933, insured instituted this action, setting up the foregoing facts, and alleging that, by reason of the injuries to and loss of his hand, he had been rendered totally and permanently disabled within the meaning of the quoted provisions of the policy, and that he was entitled to all benefits provided therein; that, after receiving his injuries, he had paid to the company the sum of $120.90 as premiums on the policy; that he was entitled to recover this sum and also the sum of $50 per month from and after October 8, 1931, to which date the company had paid him the monthly benefits as above indicated.

The company in the first paragraph of its answer denied the allegations of the petition with respect to the injuries and the extent of the disability of insured. In a second paragraph it admitted the issuance of the policy, and set out the provisions thereof with respect to waiver of premiums and the payment of disability

benefits in the event of total disability and that insured received the injuries resulting in the amputation of his hand at the time alleged in the petition which totally disabled him for a period of 4 months, and in accordance with the terms of the policy he was paid disability for that period; that, since October 8, insured has been able to and has performed work and engaged in occupation for remuneration and profit, and has not been totally disabled by reason of bodily injuries or disability from performing any work and engaging in any occupation whatsoever for remuneration and profit.

By reply, insured denied the affirmative allegations of the answer with respect to his ability to perform work after October 8, 1931, and that he was not thereafter totally disabled within the meaning of the policy.

By amended petition, which by agreement stands controverted of record, insured alleged that, since and because of the injury, he has been wholly and continuously disabled and prevented from performing any work or engaging in any occupation for remuneration or profit.

Trial before a jury on the issues thus made resulted in a verdict and judgment in favor of plaintiff for $1,170.90, and defendant is appealing.

Appellee testified that he entered the service of the Illinois Central Railroad Company when about 17 years of age, and continued in their service as a car inspector and repair man nearly 26 years, and until he received the injuries referred to. He testified that in 1926, he fell on the railroad tracks, and so injured his left hand as to necessitate the removal of the index finger and to otherwise impair the use of the hand, but that he continued in the employment of the railroad company and in the same service, receiving a salary ranging from $175 to $225 per month until he lost his hand; that, after the latter injury, the company refused to continue him in its employment on the ground that he could be of no service. He testified that he continuously suffered from the effects of the injury, and some time could get to sleep at 12 at night and at other times could not sleep unless under the influence of aspirin or other ''dope'' which the doctor gave him; that he had not been able to work to any extent after his hand was amputated. On cross-examination it was developed that, after receiving his injury, appellee visited in Cali-

fornia for about 6 weeks, and after he returned, and from November, 1931, until April, 1933, he superintended the operation of a restaurant owned by his wife, but did no work. He greeted customers who came in, acted as cashier, and purchased supplies, but received no pay for his services. He testified that one Golightly was employed as cook at the restaurant. He was asked if he did not say to Golightly that he could work in a restaurant as good as anybody and that the loss of his hand did not hurt him any because the previous injury to it had made it such that it was not very much good to him. He answered in the negative, and said that the subject never came up between them.

Golightly testified that he worked in the restaurant a little over a year. When asked what Mr. Green did in the restaurant, he stated, "He waited on the trade the same as I did and cooked sometimes." He further testified that appellee stated that he could work as good around a restaurant as anybody.

In rebuttal, appellee testified that he did not wait on trade except to set a glass of water or cup of coffee on the table after it was drawn, and that that was the extent of his waiting on the trade. He testified that the restaurant proved to be a losing business venture.

At the close of the evidence offered by plaintiff as well as at the conclusion of all the evidence, appellant made a motion for a peremptory instruction in its favor, which was overruled by the court.

The points argued as grounds for reversal in brief for appellant in substance are (1) that appellant was entitled to a peremptory instruction because appellee was not totally disabled from performing any work or engaging in any occupation whatsoever for remuneration or profit; (2) that the words "totally disabled from performing any work or engaging in any occupation whatsoever for remuneration" as used in the quoted provision of the policy mean that insured must be prevented by the disability from engaging in any occupation for which he is fitted by his training, education, and experience, or to which he can adapt himself, and not merely the particular occupation or business in which he was engaged when he received the injuries from which it is claimed the disability resulted.

To sustain the first contention made by counsel would, under the proven facts and circumstances, re-

quire an absolute departure from all established rules in this state construing disability provisions in insurance contracts.

After referring to the 6 weeks spent by appellee in California and the purchase of the restaurant by his wife after his return, counsel for appellant sum up his activities thereafter as follows:

"Although his wife owned this restaurant, Green was able to and did do practically everything necessary to be done in the operation of a restaurant of this character, he was purchasing agent, acted as cashier, waited on trade and at times even cooked when the regular cook was not present. * * * For almost two years Green performed work and engaged in occupation for remuneration and profit."

While this is not a misquotation of the evidence as a whole, it overlooks a conflict in evidence, and, to say the least, presents it in a light most favorable to the cause of appellant. It does not take into account the positive evidence of appellee that he was unable to and did not perform any labor after he received his injuries, and that his only activities in the way of the preparation or service of food to customers was to place a glass of water or a cup of coffe on the table after it had been poured. He made purchases for the restaurant and acted as cashier, but received nothing for his services.

Whether the quoted provisions of the policy be regarded as insuring against inability to perform the duties pertaining to the business or occupation in which insured was engaged or whether it insured generally against inability to perform any work or to engage in any occupation whatsoever for remuneration or profit is a matter of little consequence in determining the question at hand, since all the cases from this state which have been cited or which our research has disclosed indicate that under either interpretation the words "total disability" do not mean absolute helplessness.

In the case of Henderson v. Continental Casualty Co., 239 Ky. 93, 39 S. W. (2d) 209, an insurance policy was issued to a freight brakeman providing for monthly benefits in the event insured should be wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or work, by

reason of sickness after the policy became effective. Insured was forced to give up his position because of color blindness. The evidence disclosed that, after giving up his position, insured was capable of performing other work, and in fact did engage in another occupation which did not require the sense of color on his part. At the close of the evidence, the court peremptorily instructed the jury to find for the insurance company. This court, after an exhaustive citation and discussion of authorities, held that insured's disability was total because he was unable to follow his usual occupation, although he might be able to do other work. That case has been consistently followed.

Here a much stronger case is presented, for, if the provisions of this policy should be treated in a broader aspect and held to insure, not only against inability to perform the duties of the occupation in which appellee was engaged, but to insure generally against inability to perform any character of work, there is sufficient evidence to warrant a submission of the case to the jury. The Henderson Case and many cases, up to and including the Prudential Insurance Company of America v. Harris, 254 Ky. 23, 70 S. W. (2d) 949, 952, all hold that provisions similar to the one here should not be given such a literal and restricted construction as would preclude recovery, if, perchance, insured was able to perform some menial and unimportant work. Applying these established rules to the evidence in this case, it is apparent that an issue was made for the jury.

To sustain the second point argued by counsel would require this court to recede from a well-established rule in interpreting insurance contracts of this character and to overturn numerous cases. This much is recognized by counsel for appellant, but it is insisted that the court has fallen into error in this respect and departed from the general rule prevailing in other jurisdictions.

In the case of Prudential Insurance Company of America v. Harris, supra, insured who was employed by a railroad company as a locomotive steam pipe fitter, and had been so employed for a number of years, held a policy containing a provision similar to the one under consideration. He quit work because of illness, and thereafter furnished proof of disability to the company. The company paid him disability benefits for five months,

but refused further payment on the ground that he was not totally and permanently disabled within the meaning of the policy. In an action on the policy, he recovered the unpaid monthly benefits, and on appeal the lower court's judgment was upheld. The evidence on a whole, as indicated in the opinion, disclosed that insured was not disabled from doing some kinds of work, but was not able to hold a regular job or do manual labor, and particularly to do the work of a pipe fitter, which was his usual occupation. The opinion reviewed many cases from this and other jurisdictions construing various types of disability provisions. It will serve no good purpose to enumerate or discuss the cases dealt with in that or in the opinion in the Henderson Case. In the former opinion, with reference to the construction to be given the provisions of the policy, it was said:

"There are but few authorities supporting the extreme view that these provisions are literal and mean that the insured shall be rendered helpless. In our opinion such a construction, requiring complete mental or physical inertia, would lead to absurdity, and would be equivalent to a practical denial of recovery of that which the premium was supposed to be buying. There would have to be a living death, where the insured could not even peddle pencils or peanuts on the street. It cannot be thought that either party to the contract contemplated such a condition of indemnity."

With reference to the rule adopted by this court, it was further said:

"So it may logically be said that the contracts have been entered into with the understanding by both parties that their legal meaning is as indicated. It is not merely the age of a rule nor the frequency of its application that gives stability, for error is not less error because it has perhaps become gray with the years or smooth with use. But, when contracts have been made under the authority of a consistent judicial course of construction, it should be a very compelling situation that would warrant a change which would adversely affect rights acquired under that policy. Without determining which of the two lines of authorities we would join were the question an original one—whether the intermediate or extremely liberal group—the court has come to the conclusion that it should adhere to its former

decisions interpreting such definite clauses in insurance policies."

For the reasons indicated in the quoted excerpts, we continue to adhere to this fixed policy of the court.

Judgment affirmed.