## Prudential Insurance Co. of America v. Kelsay.

(Decided Feb. 5, 1935.)

TYE, SILER, GILLIS & SILER for appellant.

H. H. OWENS and T. B. CULTON for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Jacob E. Kelsay recovered judgment against the Prudential Insurance Company for $3,000, payable in 24 equal monthly installments. By a supplemental judgment it is provided that the installment payments referred to in the original judgment may be terminated in the event the total and permanent disability for which the judgment was recovered terminates before all the payments provided for shall have accrued. For

the purpose of determining the rights of the parties in this respect it was ordered that the case be filed away with the right to the company to redocket same at any time upon proper showing prior to the time all the payments shall have accrued, and if it shall be made to satisfactorily appear that the disability shall have ceased, then the payment adjudged to be made monthly shall no longer be paid to plaintiff.

The facts are that for about 25 years prior to December 31, 1931, appellee had been employed by the Louisville & Nashville Railroad Company as an engine inspector at its shops in Corbin, Ky. On July 1, 1925, appellant issued to the railroad company a group insurance policy No. 1788 upon a three months' renewable term plan. This policy was renewed and kept in force until December 31, 1931. The railroad company took out this policy for the benefit of its employees, but it was optional with the employees whether they accepted the benefits under it. If an employee elected to take insurance under the plan offered by the group policy he would sign an authorization card authorizing and directing the railroad company to deduct from his compensation a sufficient sum to pay his portion of the premium as set forth in the premium table in the policy. If an employee accepted the provisions of the policy, an individual certificate was issued him setting forth the insurance protection to which he was entitled, etc. Under the terms of the policy the employer was to pay not less than 1 per cent. of the premium thereon, and the individual employee was to pay the monthly premiums as set forth in the policy, but not to exceed 60 cents per month for each $1,000 of insurance. According to the evidence, the railroad company paid 50 per cent. or more of the premium on this policy.

On January 1, 1931, appellee made out and submitted to the railroad company an authorization card and was issued an individual certificate No. 56,111 for $3,000, which continued in full force and effect until the policy was permitted to expire on December 31, 1931. By the terms of this policy and the individual certificates issued to the employees as hereinbefore indicated, it was provided, in substance, that if insured became permanently and totally disabled, mentally or physically, from any cause to such an extent as to be ren-

dered wholly, continuously, and permanently unable to engage in any occupation or to perform any work for any kind of compensation of financial value during the remainder of his life, and before he attained the age of 60 years, the company would upon due proof of such disability waive the payment of that portion of each premium applicable to the insurance on the life of such person and in addition to such waiver would pay to such person the amount of insurance on his life in 24 monthly installments, each installment to be in the amount of $42.55 per $1,000 of insurance payable.

After the expiration of this policy and on January 1, 1932, appellant and the railroad company entered into another group insurance contract, which, however, did not contain a disability benefit provision, and an individual certificate was issued to and accepted by appellee under it. In May, 1933, appellee through his attorney made application to officials of the Louisville & Nashville Railroad Company for the necessary blanks to make application for total disability under certificate No. 56,111 and this letter was referred to the insurance company. After some correspondence the insurance company refused to furnish forms for making proof on the ground that there was no liability.

On August 22, 1933, appellant instituted this action seeking to recover the total disability benefits as provided in group policy No. 1788 and individual certificate No. 56,111, and alleged that in 1931, and before he had attained the age of 60, he became totally and permanently disabled and physically and mentally incapacitated to such an extent that he was rendered continuously and permanently unable to perform any kind of work for any compensation during the remainder of his life.

By answer appellant denied all the material allegations of the petition with respect to the alleged disability of plaintiff and further alleged that at all times during the period from January 1, 1932, up to and including the month of June 1932, plaintiff worked for the Louisville & Nashville Railroad Company in his regular, usual, and customary employment and followed the same occupation and performed the same duties which he had during his previous employment with the company prior to January 1, 1932, and that his alleged disability, whatever it might be, occurred upon some

date subsequent to May, 1932, and subsequent to the time the group policy No. 1788 and all certificates thereunder, including certificate No. 56,111, had been fully and finally canceled and terminated. The issues were completed by a reply traversing the affirmative allegations of the answer.

The sole ground urged for reversal is that the court erred in overruling appellant's motion for a peremptory instruction, and as indicated in brief for appellant the determination of this question is made to depend upon whether there was sufficient evidence to show that appellee became totally and permanently disabled within the meaning of the group policy No. 1788 and the certificate issued to appellee thereunder.

It appears in evidence that appellee was an expert machinist and received the highest wages for employees in that class of service. According to his evidence, and the evidence of physicians and other witnesses, his hearing became impaired a number of years ago, and this condition gradually grew worse. He testified that in 1931 his hearing became so bad that he could not tell from the sounds of his hammer whether parts of the engines he was required to inspect were loose or defective; that his vision was greatly impaired, and because of sickness and physical infirmities he was unable to crawl around and under the machinery or to handle the tools with which he was required to work. Some time in the latter part of 1931 the railroad company took appellee off the job as inspector, and placed him in the back shop as a helper to an apprentice machinist, but continued to pay him the maximum wages for machinists. The apprentice under whom he worked received approximately half the wage paid appellee. Dr. S. T. Jarvis, who testified at the trial held in February, 1934, stated that he had known appellee since 1922; that appellee was totally deaf in his right ear, and in order to make him hear in his left ear it was necessary to get up to the ear and to hollo very loud; that this condition had existed for about 2 years; that he saw appellee professionally in November and December, 1929, and in February, 1932; that in February, 1932, his hearing was possibly not so bad as at the time of the trial. The witness was asked, "What is the matter with this man with respect to disability, if he has any, to perform manual labor?" to which he

replied, ''Well, he had chronic nephritis and gall bladder' trouble, chronic appendicitis, prostate hyperated, enlarged and tender and his vision is impaired and his teeth are bad. He is deaf in his right ear and has about 75 per cent I would say loss of hearing in the left ear 75 per cent loss and he has dental caries and infected tonsils.'' He further testified that appellee's mind was slipping away, and that his memory was poor. When asked about his condition on February 3, 1932, he replied: ''He had the same trouble to a less degree —his blood pressure is higher than it was and he had that gall bladder trouble and appendicitis and nephritis.'' He testified that the conditions he found in February, 1932, had gradually developed; that he considered him at the time disabled, and gave as his opinion that he was then totally disabled and incapacitated to perform manual labor to a substantial degree, such as an engine inspector, or to work around machine shops for the railroad company. Dr. L. S. Siler, a physician employed by the Louisville & Nashville at Corbin for many years prior to 1928, stated that he was appellee's regular physician from 1903 until 1920, and thereafter was a consulting physician to the family; that he saw appellee professionally more than once in the fall of 1931; that prior to 1931 appellee had a bright mind and could talk intelligently on any ordinary subject, but that his mind began to get off and when he saw him in that year he could not talk nor answer questions intelligently; that his hearing was bad. The doctor gave as his opinion and from his examination of appellee that from the latter part of December, 1931, he had been physically and mentally unable to perform in a substantial manner work for remuneration, and that he never would be.

The evidence for appellant shows that appellee continued in its service up to and including June, 1932, when, on account of the business depression, he and a number of others were laid off. In September of that year, when employees were being taken back, appellee made application to be restored to service, and was sent to the company's physician for examination. The company refused to restore him because the doctor's report showed him to be incapacitated to such an extent as to be unable to work in the shops.

Logan Hudson, the apprentice machinist with whom

appellee was placed as helper after being taken off his job as engine inspector, testified that appellee was not able to perform the work he was supposed to do; that he and others had to continually watch and warn him of approaching engines, cranes, etc., by calling to him and punching him; that appellee would lay his tools down and then would be unable to find them.

Appellant introduced Mr. Rose, the foreman of the shops, and also a bookkeeper who worked in the office. They testified that appellee continued to work until he and others were laid off on account of the depression. Mr. Rose stated that appellee had had no experience in the character of work he was required to do with the apprentice machinist. He also testified that his hearing was bad, and he had to be warned of approaching engines, etc., but that he had been hard of hearing for a number of years. When asked on cross-examination whether it was safe for him to be at work in the shops, he answered, "Absolutely it was not safe for him to be there." It further appears in evidence that in 1931 appellee requested and was furnished blanks for making out proof of total disability. The blanks were filled out, but for some reason not explained in the record appellee changed his mind and did not send proof to the company.

Great reliance is placed by counsel for appellant on the fact that appellee did continue to work after December, 1931, as establishing that he had not become wholly disabled within the meaning of the terms of the policy then in force. Evidently he had become disabled to such an extent as to unfit him to continue his work as engine inspector in August, 1931, as is evidenced by the fact that he was taken off that job and assigned a place as a helper to an apprentice in the shop. Mr. Rose testified that it had long been a custom of the company to give some character of light employment to men who had become disabled, but that the company had abandoned that policy. He could not recall whether this change in policy had taken place before appellee was let out of the service.

The evidence for appellee that he was totally and permanently disabled within the meaning of the provisions of the policy as such provisions have been construed by this court is very persuasive, if not in fact convincing and conclusive, and the evidence for ap-

pellant clearly demonstrates that appellee was inexperienced in the character of work required of him in the shops; that he was practically devoid of hearing, and his eyesight so impaired that he could not see how to strike a chisel with a hammer; that his mind and memory were so impaired that he could not keep track of his tools and that he was in such a feeble physical condition as not to be able to properly perform the work; that he had to be directed in his work by the apprentice.

In construing provisions similar to those in the policy under consideration here, this court has consistently given to them a much broader interpretation than that contended for by counsel for appellant. As said in the recent case of Bankers' Life Company v. Green, 256 Ky. 496, 76 S. W. (2d) 276, it is a matter of little consequence whether this policy be regarded as insuring against inability to perform the duties of the occupation in which insured was engaged or whether it insured generally against inability to perform any work or engage in any occupation whatsoever for remuneration or profit, since in either event this court has, in a long line of cases, held that the words "total disability" do not mean absolute helplessness, nor preclude recovery if the insured is able to perform some menial or unimportant work; and the situation is not changed because appellee was assigned to and did try to perform duties in the shop after he is alleged to have become disabled, if in fact he was totally disabled within the terms of the policy before it expired. See Equitable Life Assur. Soc. v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703; Prudential Insurance Company v. Harris, 254 Ky. 23, 70 S. W. (2d) 949, and the exhaustive compilation and discussion of authorities bearing on this question in the latter case.

The evidence as a whole leaves no room for doubt concerning the propriety of the lower court's action in overruling appellant's motion for a peremptory instruction. The jury, under instructions more favorable to appellant than it was entitled, found for appellee, and since the verdict is sustained by a very great weight of evidence, it should not be disturbed.

Judgment affirmed.