## Prudential Ins. Co. of America v. Kendrick.

(Decided Dec. 11, 1935.)

298

STRATTON & STEPHENSON for appellant.
CHILDERS & BOWLES for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

For a paid premium of $165.80, the Prudential Insurance Company of America, on the 29th day of September 1925, issued and delivered a policy to George D. Kendrick and wife, Maxie Kendrick, insuring their lives from the 29th day of September, in the sum of $2,500.

The policy contains this provision:

"Waiver of Premiums, Payment of Insurance. Disability Before Age 60: Waiver of Premiums * * * Payment of Insurance in Monthly Installments * * * If George D. Kendrick one of the Insured, shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his lifetime, and if such disability shall occur at any time after the payment of the first premium on this Policy, while this Policy is in full force and effect and said one of the insured is less than sixty years of age, and

before any non-forfeiture provision shall become operative, the Company, upon receipt of due proof of such disability, will grant the following benefits:

"(1) Waiver of Premiums. The Company will waive the payment of any premium or premiums the due date of which as specified on the first page of the Policy, shall occur after receipt by the Company of said proof of such disability.

"(2) Payment of Insurance in Monthly Installments. * * * The 'Company will, in addition to waiving the premiums, pay to the Insured at its Home Office the amount insured, less any indebtedness under this Policy, in one hundred and twenty monthly installments during ten years, each installment to be of the amount of $9.74 per $1,000.00 of insurance payable. The first of such monthly installments shall be paid immediately upon receipt by the Company of due proof of such disability and subsequent monthly installments shall be paid on the first day of each month thereafter."

The decision of this case calls for a construction and application of this clause to the proven facts.

George D. Kendrick, prior to, and at the time of, the issuance of the policy, engaged in farming. On the first day of April, 1926, while plowing, his feet "broke down." He was carried from the field to his home. Dr. Jackson was called and diagnosed his trouble to be progressive neuritis. It rapidly developed in his shoulder, arms, hands, knees, and feet. He recovered so as to walk, but his "feet were so drawn" his toes would not touch the ground; could not walk in loose ground or permit his toes to come in contact with the ground. He walked on his heels. When riding, the condition of his feet prevented him putting them in the stirrups. One shoulder was so afflicted he could not use it. This condition of his shoulder, hands, and feet continuously existed from in April, 1926, to the time of the trial in the circuit court.

In May, 1927, Kendrick began to write to the Prudential concerning his disability. Will Bentley was its agent in the county of Kendrick's residence. Kendrick informed him of his condition. Bentley delivered him forms with which to furnish the Prudential proof of his disability. Kendrick delivered them to Dr. Jack-

son to prepare proof of his disability. Dr. Jackson was feeble, blind in one eye, with cataract in the other. He filled out the proof of disability from memory. In stating the date, Dr. Jackson gave January 1, 1929, as the date of its commencement, and February 15, 1930, the date he became totally and permanently disabled.

Kendrick, confiding in Dr. Jackson's preparation of the proof of disability, without reading it, permitted Dr. Jackson to mail the same to the Prudential. After it received the proof, it informed Kendrick that since his disability began in 1929, and the proof was not received until March 2, 1931, he was not entitled to the disability benefit, except to the extent of its waiver of the premiums, thereafter due. Kendrick again returned to Bentley, the agent, and obtained another set of blanks for proof of disability and caused Dr. Jackson to fill out the same, showing the correct date of the commencement of his disability, April, 1926; the nature and extent thereof, which after being executed by him and Dr. Jackson, was mailed to the Prudential together with an affidavit of Dr. Jackson stating that Kendrick's disability began in April, 1926, and had been continuously total and permanent; and that in so far as the proof of disability theretofore signed by himself and Kendrick and mailed to the Prudential stated that it commenced in 1929, the same was a mistake. This second proof of disability and accompanying affidavit were dated February 24, 1931.

Some time in May, 1931, the Prudential requested Dr. Craft to examine Kendrick and report to it his physical condition. Craft did so, and in his report to it he stated that Kendrick had been ''continuously wholly incapable of engaging in any gainful work,'' ''from the 1st day of June 1930 until the present time;'' that he was afflicted with rheumatism, manifested by ''swelling and deformity of both wrists, and stiffness with deformities of both joints and hands and ankles.'' In 1932, at the direction of the Prudential, Craft again examined him, and on October 15, 1932, signed and forwarded to it a history of Kendrick's disability, in which he stated he had had rheumatism since 1926, and was ''totally, wholly and permanently incapable of engaging in any gainful work,'' and had been for the past two or three years.

The Prudential continued to insist in its letters to

Kendrick that its only liability to him under the disability clause was waiver of the payment of the premiums. This action was brought by Kendrick to recover of it the disability benefit. Issues were formed by appropriate pleadings, and on a trial by a jury a verdict was returned in favor of Kendrick, on which a judgment was entered for $998.35 payable in forty-one installments "beginning July 1st, 1931 and occuring from month to month on the first day of each month up to and including the first day of November 1934, and each installment bearing interest at the rate of six per cent (6%) per annum from the first day of such month until paid"; also for "the balance of the 120 installments at the rate of Twenty-four Dollars and Thirty-five cents ($24.35) per month," "aggregating One Thousand Nine Hundred Twenty-three Dollars and Sixty-five Cents ($1,923.65), payable at the rate of Twenty-four Dollars and Thirty-five Cents ($24.35) per month for a period of Seventy-nine (79) months beginning the first day of December 1934, and the same amount on the first day of each succeeding month until the One Thousand Nine-Hundred Twenty-three Dollars and Sixty-fice Cents ($1,923.65) was paid or until plaintiff's presumably permanent and total disability ceases." The judgment further provided for the retention of the action on the docket subject to the orders of the court.

The Prudential is here insisting it was entitled to a verdict, and that Kendrick's evidence establishing his disability before he became sixty years of age was incompetent; Kendrick's proof of disability was not furnished "within a reasonable time" "after said alleged disability occurred;" the court's instruction improperly defined the term "permanent disability."

The basic error in the Prudential's several contentions is its omission to rightly comprehend, interpret, and apply to the established facts the quoted provision of the policy.

That portion of it affording Kendrick a right to waiver of premium is not here involved, since all premiums were timely paid to, and accepted by, the Prudential.

The burden was on Kendrick to establish by competent, relevant evidence that he became totally and permanently disabled by rheumatism, and that the dis-

ability commenced before he arrived at the age of sixty, and that it will presumably continuously prevent him for life engaging in performing any work. Equitable Life Assur. Soc. of United States v. Merlock, 253 Ky. 189, 69 S. W. (2d) 12, and cases cited therein.

The evidence showing Kendrick's age, the commencement, extent, and continuance of his rheumatic condition and his inability to engage in farming is uncontradicted. The evidence showing that he occasionally performed mere trivial services such as infrequently waiting on customers in his wife's store, or looking over his farming and giving directions to farm laborers, is insufficient to overcome the proof so indubitably establishing his total and permanet disability. Equitable Life Assur. Soc. of United States v. Fannin, 245 Ky. 474, 475, 53 S. W. (2d) 703; Ætna Life Ins. Co. v. Wyant, 249 Ky. 562, 61 S. W. (2d) 50; National Life & Accident Ins. Co. v. Bradley, 245 Ky. 311, 53 S. W. (2d) 701; Prudential Ins. Co. of America v. Kelsay, 257 Ky. 633, 78 S. W. (2d) 923.

Kendrick reached the age of sixty on August 15, 1928. His total and permanent disability commenced in April, 1926. The Prudential's liability therefor began at the inception of his disability. Mutual Life Ins. Co. of New York v. Wheatley, 243 Ky. 69, 47 S. W. (2d) 961.

His disability having occurred, and the Prudential's liability to him under the disability clause having existed before he arrived at the age of sixty, his right to recover therefor continued until barred by the statutes of limitation, unless the quoted clause of the policy contains language providing for a forfeiture of, or makes the furnishing of proof of disability a condition precedent to, his right to recover.

It is true that where a policy requires proof of disability under the penalty of forfeiture, the liability is defeated, if the condition of performance is not performed or waived (Insurance Co. of North America v. Sumner, 234 Ky. 340, 28 S. W. [2d] 114); or if the policy makes the furnishing of proof of disability within a reasonable time, forthwith, or within a specfied time, a condition precedent to the recovery of the disability benefit, it is binding, unless excused or waived by the insurer. Prudential Ins. Co. of America v. Dis-

more, 254 Ky. 725, 72 S. W. (2d) 433; Brotherhood of Railroad Trainmen v. Woods, 256 Ky. 613, 615, 76 S. W. (2d) 911; Dunning v. Continental Ins. Co., 254 Ky. 368, 71 S. W. (2d) 995; Equitable Life Assur. Soc. of United States v. Adams, 259 Ky. 726, 83 S. W. (2d) 461. It is likewise a permanent rule that the insurer is without right to and cannot complain of the insured's delay in furnishing proof of disability, in the absence of a policy provision providing a forfeiture, or limiting the time, therefor. See Ætna Life Ins. Co. of Hartford v. Castle, 259 Ky. 722, 83 S. W. (2d) 465; Ætna Life Ins. Co. of Hartford v. Wells, 254 Ky. 650, 72 S. W. (2d) 33; Mutual Life Ins. Co. of New York v. Smith, 257 Ky. 709, 79 S. W. (2d) 28, and Brotherhood of Railroad Trainmen v. Woods, supra.

It will be observed from a simple reading of the clause of the policy now under consideration, that it merely postpones the payment of the disability benefits until Kendrick furnished the Prudential proof of his disability, and does not make the furnishing of the proof a condition precedent to its liability nor provide a forfeiture, if he failed to furnish proof thereof before attaining the age of sixty. Mutual Life Ins. Co. of New York v. Smith, supra; Horn's Adm'r v. Prudential Ins. Co. of America, 252 Ky. 137, 65 S. W. (2d) 1017; Yorkshire Ins. Co. v. Kirtley, 243 Ky. 162, 47 S. W. (2d) 922; Western Automobile Casualty Co. v. Lee, 246 Ky. 364, 55 S. W. (2d) 1.

Its requirement respecting the furnishing of the proof of disability is only a condition precedent to his right to collect, or compel the payment of, the disability benefit. Mutual Life Ins. Co. of New York v. Smith, supra. The Prudential cites to us and relies upon Southern Life Ins. Co. v. Hazard, 148 Ky. 465, 146 S. W. 1107, and Fidelity Mutual Life Ins. Co. v. Gardner's Adm'r, 233 Ky. 88, 25 S. W. (2d) 69. The principles stated therein are perfectly consistent with those herein reiterated.

Drs. Jackson's and Craft's and Kendrick's mistake in the date of the commencement of his disability, as contained in the first and third proof of disability, did not forfeit the policy, nor can the same be relied upon as an estoppel, or a bar of his recovery, since he furnished another containing the correct date of the com-

mencement of his disease before the bringing of his action. Southern Life Ins. Co. v. Hazard, supra; Sun Life Assur. Co. of Canada v. Wiley, 258 Ky. 311, 79 S. W. (2d) 937.

The Prudential criticizes the court's definition of the term "permanent disability." The evidence establishing Kendrick's total and permanent disability is so overwhelming, even if it be conceded the court incorrectly defined this term, that such was not prejudicial. Sun Life Assur. Co. of Canada v. Wiley, supra.

The record discloses no prejudicial error authorizing a reversal; therefore, the judgment is affirmed.