# Jefferson Standard Life Ins. Co. v. Pierce.

(Decided May 5, 1936.)

EATON & BOYD for appellant.

CHARLES FERGUSON and J. R. WELLS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

A verdict in favor of James Marion Pierce on account of total and permanent disability under a policy, issued and delivered to him by the Jefferson Standard Life Insurance Company, was rendered for "the sum of $50 per month, beginning February 1, 1933, up to and including October 1, 1934, or a total of twenty-one payments aggregating $1,050" "with interest on each payment due the first of each month beginning February 1st, 1933, and ending October 1st, 1934, at the rate of 6% per annum."

The disability claimed is tuberculosis of the lungs.

The petition contains appropriate and sufficient allegations to state a cause of action for disability benefits on the stipulations in the policy which is made an exhibit to it. It was traversed by answer.

And certain provisions of the policy and Pierce's failure to comply therewith are pleaded as a bar to a recovery. These provisions read:

"In case of default in the payment of any premium, or installment of premium, or note given for any renewal premium or portion thereof, this policy shall cease and determine and the payments received hereon shall become the property of the company, except as specified on second page hereof."

"If while this policy is in force, and before the anniversary of this policy on which insured's age at nearest birthday is sixty years, the company shall be furnished, during the lifetime of the insured and during the period of disability as herein defined, with due proof that the insured has become totally disabled by bodily injuries or disease and has been continuously and wholly prevented thereby for four or more consecutive months from engaging in any occupation or employment whatsoever for remuneration or profit, the company by endorsement upon the policy will agree:

"(a) To waive the premiums or installments thereof which shall become payable during such period of continuous total disability, beginning with the premiums, or installment thereof, the due date of which next succeeds the date of commencement of such disability; provided, however, that in no event shall a premium or installment thereof be waived, the due date of which preceded by more than six months the receipt, at the home office of the company, of written notice of such disability. However, if any premiums or installments thereof that become due during such disability are in default before receipt at the home office of the company of written notice of such disability such premiums or installments shall be waived, provided the written notice of such disability is received at the home office within six months of the due date of the first such premium or installment thereof in default; or if such disability commenced within the grace period allowed for payment of the first such premium or installment thereof in default, the insured shall be liable to the company for said first premium or installment thereof in default, with interest at six per cent per annum, and succeeding premiums or installments which shall have become payable during such disability shall be waived, provided the written notice of such disability is received at the home office within six months of the due date of the first such premiums or installments thereof in default.

"(b) To pay to the insured during the further continuance of such disability after receipt and approval of said proof, a monthly income of one per cent of the face amount of this policy, the first payment to be made immediately and succeeding payments at the end of each completed month of such disability, during the lifetime of the insured; provided no disability income shall be 'paid for any period of disability which preceded by more than one month the receipt of written notice of such disability at the home office of the company unless it be shown that it was not reasonably possible to give such notice and that notice was given as soon as was reasonably possible; and further provided that in no event will any disability income be paid

for the first three months of such disability, nor for a fractional part of a month of such disability nor for any period of disability, which preceded by more than six months the date of receipt at the home office of the company of written notice of such disability. To be effective, the written notice required under the terms of (a) and (b) above, must be given to the company at its home office during the lifetime of the insured and during the period of continuous total disability, unless it be shown that it was not reasonably possible to give such notice and that notice was given as soon as was reasonably possible; but in no such case shall disability income be paid or premiums or installments thereof waived for any period of disability which preceded by more than six months the actual receipt at the home office of the company of written notice of such disability; nor shall disability income be paid for three months of such disability nor for a fractional part of a month of such disability.''

It is specifically pleaded that, on account of Pierce's failure to comply with these provisions, the policy lapsed, and the company is not liable to him thereon.

The parties agree that Pierce was a farmer; that the policy was issued and delivered to him on December 11, 1931, and that he paid therefor $265.20 for the term of the first policy year, and that he paid no other or subsequent premium.

To substantiate his cause of action, he testified that in the spring of 1932 he became so diseased as to render him totally and permanently disabled, as these terms are used in the policy. The symptoms of his disease were and are: "A headache"; "a cough"; "a shortness of breath"; "weakness"; "soreness through the chest"; "a tired, broken-down feeling"; if he "attempted to do any work," he "would become weaker" and "utterly fatigued" and "a little temperature would rise," and since their commencement they have existed continuously to the date of his testimony. On account of his health he was unable to and had not worked since the spring of 1932.

On July 6, 1934, Dr. Shemwell examined him and

ascertained he had an infection of the throat and the back of the nose, called "pharyngitis; inflammation of the sinus on the right side of his head," and "chronic pulmonary tuberculosis, with some activities." The doctor stated that the symptoms of tuberculosis of the lungs were a "loss of weight; a tired, weak feeling, and a rise of temperature—the patient usually gets weaker and weaker and goes on down." "On physical exertion the patient is nervous, rise of temperature in the afternoon, as a rule, a slight cough"; "rales over the lungs, particularly in the apex." He declared that Pierce had rales in the upper, and were more pronounced in the "right, apex." The X-ray revealed "an increased density in the apex of each lung, more pronounced and more marked on the right side." He also stated that Pierce's "condition could have existed all the way from one to ten years prior to his examination." Dr. Willingham also examined Pierce in July, 1934, and his diagnosis was substantially that of Dr. Shemwell. Dr. Willingham had previously examined him about the 23rd of March, 1934. At that time "he had a temperature of 99 2-3, pulse rate about 100; blood pressure of 140 systolic—diastolic 90"; "a very pronounced case of tonsilitis, sore throat, sinusitus, soreness in one side of the face." He failed by a mere physical examination to make a diagnosis of his disease to be tuberculosis. His diagnosis at that time was "Pierce's ailments were chronic rheumatism, chronic tonsilitis, paroxysms of headaches," causing his "disability as temporarily total," which he reported to Pierce. At the July examination he examined Pierce with the X-ray which confirmed his diagnosis of tubercular activity at that time, including the ailments discovered by him in March, from a mere physical examination. He explained that his examination in July was complete, with X-ray, and Pierce's lungs were tubercular. Dr. Shemwell was recalled and stated that at the time he examined Pierce "he had a temperature of 99 2-5, 140 systolic, 90 diastolic," and an X-ray picture of his lungs showed a tubercular condition.

Roy Cook, Mark Little, John Farris, and E. T. Hardin, neighbors of Pierce, were permitted over the objection of the insurance company to express their opinions as to Pierce's health; some of them as to his ailment and inability to work for two years next be-

fore the trial. It was improper for either of them to testify as to what ailed Pierce; North American Acc. Ins. Co. v. Caskey's Adm'r, 218 Ky. 750, 292 S. W. 297; or to express an opinion as to his ailments, Sovereign Camp W. O. W., v. Morris, 212 Ky. 201, 278 S. W. 554; or to express an opinion whether his physical condition was such that he could, or could not, do any labor, Cincinnati, N. O. & T. P. R. Co. v. Ross, 219 Ky. 824, 294 S. W. 460; Ætna Life Ins. Co. of Hartford Conn., v. Prater's Adm'x, 259 Ky. 665, 83 S. W. (2d) 17; Equitable Life Assur. Soc. of U. S. v. Green, 259 Ky. 773, 83 S. W. (2d) 478.

The prevailing rule is "that lay witnesses may testify as to apparent vigor, strength, and physical condition of another person and as to the presence or absence in such person of symptoms indicating forms of disease so common and well understood as to be within the knowledge of a layman. But the evidence of a layman should be confined to facts within his knowledge and not permitted to extend to matters of opinion, since he cannot diagnose diseases or give expert evidence with reference thereto." Equitable Life Assur. Soc. of U. S. v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703, 706.

Our resume of the testimony of Pierce and the physicians, excluding that of the lay witnesses, shows it was sufficient to authorize a submission of the issues as to the commencement of his disability and whether it was total and permanent within the meaning of the policy. Equitable Life Assur. Soc. of U. S. v. Merlock, 253 Ky. 189, 69 S. W. (2d) 12. The testimony of the lay witnesses was merely accumulative, though incompetent, and therefore its admission was not prejudicial, such as alone to require a reversal.

It remains our duty to review the quoted provisions of the policy and determine whether Pierce's failure to comply therewith was a bar to his recovery, although his disability commenced and was total and permanent prior to December 11, 1932, the date the company insists the policy lapsed for nonpayment of the second premium.

Pierce's contract of insurance was not for a single year with the privilege of renewal, but an entire contract for life, subject to forfeiture by failure to perform

the condition subsequent of payment of the premiums as provided. There is a clear legal distinction between these types of policies. McMaster v. New York Life Ins. Co., 183 U. S. 25-35, 22 S. Ct. 10, 46 L. Ed. 64. See, also, Masonic Relief Ass'n v. Hicks, 47 Ga. App. 499. 171 S. E. 215, Prudential Ins. Co. of America v. Ferguson, 51 Ga. App. 341, 180 S. E. 503, and Johnson v. Metropolitan Life Ins. Co. (Ga. App.) 184 S. E. 392.

If Pierce's disability commenced and was total and permanent prior to December 11, 1932, the insurer's liability therefor began at the inception of his disability. Mutual Life Ins. Co. of New York v. Wheatley, 243 Ky. 69, 47 S. W. (2d) 961; Prudential Ins. Co. of America v. Kendrick, 262 Ky. 297, 90 S. W. (2d) 52; Equitable Life Assur. Soc. of U. S. v. Green, supra; Horn's Adm'r v. Prudential Ins. Co. of America, 252 Ky. 137, 65 S. W. (2d) 1017.

It having become total and permanent prior to December 11, 1932, while the policy was in force, his right to recover, and the insurance company's liability to him, continued and existed at the time of the institution of this action, unless the quoted clauses of the policy contains language providing for a forfeiture of, or makes the furnishing of notice and proof of disability a condition precedent to, his right to recover.

It is an established rule that, where the policy requires notice or proof of disability under the penalty of forfeiture, the right of the insured is defeated, if the forfeiture is not waived (Insurance Co. of North America v. Sumner, 234 Ky. 340, 28 S. W. (2d) 14); or, if the policy makes the giving of notice or furnishing of proof of disability within a reasonable time, forthwith, or within a specified time, a condition precedent to the recovery of the disability benefit, it is binding on the insured, unless excused or waived by the insurer. Prudential Ins. Co. of America v. Dismore, 254 Ky. 725, 72 S. W. (2d) 433; Prudential Ins. Co. of America v. Kendrick, supra, and cases cited.

On February 27, 1933, after Pierce's second premium became due on December 11, 1932, Pierce wrote, signed, and mailed to the Jefferson Standard Life Insurance Company a letter requesting it to mail him "the necessary blanks of application for disability."

In response thereto, on March 6, 1933, it wrote and mailed him a letter containing this statement:

> "The policy which we issued on your life lapsed, without value, when you failed to make a settlement for the first semi-annual installment of the second year premium which fell due December 11th, 1932. We are very sorry that this policy was allowed to lapse and was not kept in full force and effect."

On August 27, 1934, Pierce's attorney, by letter, requested the insurer to furnish "the blank forms" required in making out disability claims on its policy to Pierce to which it responded:

> "We are very sorry to have to advise that the above policy is not in full force and effect and has not been in full force and effect since Mr. Pierce failed to pay the second annual premium when it fell due December 11th, 1932. When this premium was not paid there was no further value in the contract and the contract lapsed without notice, and the company has no liability since the date of the lapse, December 11th, 1932."

Reverting to the provision of the policy hereinbefore quoted, it is plain that it provides that the furnishing of proof of disability "during the lifetime of the insured, and during the period of disability," is a condition precedent to a waiver of the payment of a premium or installment thereof, which became due "during the period of continuous total disability, beginning with the premium or installment thereof, the due date of which next succeeds the date of commencement of such disability." As to written notice, the same provision states that, "if any premiums or installments thereof that become due during such disability are in default before the receipt at the home office of the company of written notice of such disability, such premiums or installments shall be waived, provided the written notice of such disability is received at the home office within six months of the due date of such premiums or installments thereof in default."

Pierce's furnishing notice to the company by his letter of February 27, 1932, entitles him to the benefits of this clause, notwithstanding he did not furnish proof of his disability.

It is true we have repeatedly ruled in other cases that the furnishing proof of disability before the premiums became due or before the policy lapsed was a condition precedent to the waiver of the premium, and accordingly that proof of disability was offered too late. See Northwestern Mut. Life Ins. Co. v. Carneal, 262 Ky. 665, 90 S. W. (2d) 1010, and Pacific Mut. Life Ins. Co. v. Paynter, 255 Ky. 669, 75 S. W. (2d) 335.

In those cases, the policies did not also, as here, provide for a waiver of the same premium or installment, if written notice of such disability is received at the home office within six months of the due date of the first such premium or installment thereof in default. Hence the above cases and many others cited to us by the Jefferson Standard are inapplicable in the present one, because of the difference of the provisions in the contracts of insurance. Northwestern Mut. Life Ins. Co. v. Carneal, supra.

> "It is a matter of general knowledge that the policies of insurance companies seldom, if ever, contain the identical terms or conditions, or employ the same words, phrases, or clauses. Therefore, every company's policy must be construed as it is written and applied to the developed facts in the particular case."

Mutual Life Ins. Co. of N. Y. v. Smith, 257 Ky. 709, 79 S. W. (2d) 28, 34.

It is not disputed that Pierce failed to furnish proof of disability; nor is it disputed that he gave notice at the home office within six months of the default in the payment of the premium due December 11, 1932. The giving of the notice on the 27th day of February, 1933, was a fulfillment of the requirements of the policy respecting the giving of the notice, and the company was therefore without right to cancel the policy and declare it lapsed, and thus defeat his claim for disability which accrued prior to December 11, 1932, during the life of the policy. Northwestern Mut. Life Ins. Co. v. Carneal, supra.

Another principle entitles Pierce to recover. In the Carneal Case we quoted it with approval from Mid-Continent Life Ins. Co. v. Harrison (Okl. Sup.) 53 P. (2d) 266, 267, to which the interested reader is referred.

It was our conclusion in the Carneal and Horn Cases that, when the disability insured against occurred before default in premium or installment thereof, the insured's right became fixed then. Pierce's disability having become total and permanent prior to December 11, 1932, his right to the disability benefits matured then. So far as the subject of indemnity is concerned, his right thereto accrued by reason of the happening, during the life of the policy, of that which he was insured against.

> "A subsequent lapse of the policy in other respects could not operate as a release of the company for any liability on account of total disability which had arisen prior to that time. Illinois Bankers' Life Ass'n v. Byassee, 169 Ark. 230, 275 S. W. 519, 41 A. L. R. 379."

Horn's Adm'r v. Prudential Ins. Co. of America, 252 Ky. 137, 65 S. W. (2d) 1017, 1020. To the same effect see McGovern v. United States (D. C.) 294 F. 108, and Sovereign Camp, W. O. W., v. Bowers, 260 Ky. 347, 85 S. W. (2d) 665.

The provision of the policy which automatically canceled it or conferred authority on the insurer to declare it lapsed on Pierce's failure to pay the premium, under the proven facts and circumstances, was ineffective as to his right to the disability benefits.

> "Of course, it would be different if his total and permanent disability arose after his policy lapsed." This rule is in harmony with the principle announced in the Wheatley, Kendrick, and Green Cases; i. e., that "benefits for total and permanent disability, payable during continuance of disability, are payable from the inception of such disability."

The insurance company is in no attitude to rely on Pierce's failure to furnish either notice or proof of total disability, in accordance with the policy. The rule is, though the policy provides that the disability benefits are not due and payable or that no action may be maintained thereon unless and until the insured furnishes notice and proof of disability in accordance with the terms of the policy, yet, if the company denies its liability on the policy for any sum, it thereby deprives itself of its right to demand a compliance of the in-

sured, or to rely on as a defense his failure to comply therewith in this respect. Orient Ins. Co. of Hartford v. Clark, 59 S. W. 863, 22 Ky. Law Rep. 1066; Staples v. Continental Ins. Co. of N. Y., 223 Ky. 842, 5 S. W. (2d) 265; Home Ins. Co. of N. Y. v. Mears, 105 Ky. 323, 49 S. W. 31, 20 Ky. Law Rep. 1217; Germania Ins. Co. v. Ashby, 112 Ky. 303, 65 S. W. 611, 23 Ky. Law Rep. 1564, 99 Am. St. Rep. 295; Home Ins. Co. of N. Y. v. Koob, 113 Ky. 360, 68 S. W. 453, 24 Ky. Law Rep. 223, 58 L. R. A. 58, 101 Am. St. Rep. 354; Philadelphia Fire & Marine Ins. Co. v. English, 232 Ky. 785, 24 S. W. (2d) 616; Horn's Adm'r v. Prudential Ins. Co. of America, Supra; Independent Life Ins. Co. of America v. Downey, 255 Ky. 95, 72 S. W. (2d) 1008; Cornell v. Travelers' Ins. Co. of Hartford, 120 App. Div. 459, 104 N. Y. S. 999, affirmed 192 N. Y. 587, 85 N. E. 1107; Lobdell v. Broome County Farmers' Fire Relief Ass'n, 151 Misc. 911, 271 N. Y. S. 272.

It is not disputed that since February 27, 1933, the insurance company has persistently denied all liability on the policy and did so in its answer herein. It offered no evidence on the issues as to the commencement of Pierce's disability and whether it was total and permanent. On the evidence and the principles herein reiterated, the court properly denied its peremptory instruction.

Wherefore the judgment is affirmed.