MUTUAL BEN. HEALTH & ACCIDENT ASS'N v. PATTON et ux.

No. 1679.

District Court, E. D. Kentucky.

Feb. 24, 1941.

Bruce & Bullitt and R. Lee Blackwell, all of Louisville, Ky., for plaintiff.

B. J. Bethurum, of Somerset, Ky., for defendants.

FORD, District Judge.

In June, 1935, the plaintiff, Mutual Benefit Health & Accident Association, issued and delivered to the defendant, E. H. Patton, its "Business and Professional Men's Policy" by which, in addition to insurance against accident, it agreed to pay him benefits for total disability "resulting from disease, the cause of which originates more than thirty days after the effective date of this policy", with the further provision that "disability resulting from tuberculosis or heart trouble shall be covered only if the disease originates after the policy has been in continuous force for the six preceding months."

The Association seeks a declaration of the rights of the parties under the contract, alleging the requisite jurisdictional facts and the existence of a controversy making such relief appropriate.

The defendant, by counterclaim, alleges that on September 11, 1936, while the policy was in full force and effect, he "was stricken with organic heart trouble" which rendered him totally and permanently disabled, in consequence of which he seeks to recover the benefits provided by the policy for such disability.

In addition to its claim of immunity from liability on the ground of alleged misrepresentation of material facts in the application for the policy, its reliance upon an alleged compromise settlement of June 26, 1937, and upon article 17 of the policy providing proportionate liability with other insurance carriers, as alternate defenses, the Association contends that the heart trouble which resulted in the disability for which recovery is sought originated with-in less than six months after the effective date of the policy and since it is a disease which under the terms of the policy is covered only if it originated after the policy had been in continuous force for the six preceding months, it is not within the coverage of the policy.

Contracts of insurance against disabilities resulting from disease frequently limit the liability of the insurer to a certain period, the bounds of which may be marked by the age of the insured, the duration of a certain employment or some other stipulated period or event. Where physical examination is dispensed with, waiting periods are often provided which postpone coverage until their expiration. An example of a provision of this type is that contained in the policy involved in Equitable Life Assur. Soc. of United States v. Arrowood, 253 Ky. 456, 69 S.W.2d 984, in which the court, in upholding the validity of such limitations, said: "It will be observed that the policy does not provide insurance against total and permanent disability arising from disease within the first six months after the policy became effective as to the individual person insured. This postponement of liability may have been substituted in lieu of a medical examination, since none was required. But regardless of its purpose the company had the right to make the exclusion from the risk it was assuming and it was competent for the parties to contract for such limitation of liability."

By the plain and unambiguous terms of the policy here involved, liability for disability resulting from heart trouble is conditioned upon the disease originating after a definitely prescribed period. That condition is of the essence of the agreement and its fulfillment is a prerequisite to the right of recovery. Aetna Life Ins. Co. v. Gullett, 253 Ky. 544, 548, 69 S.W.2d 1068; Equitable Life Assur. Soc. of United States v. Merlock, 253 Ky. 189, 69 S.W.2d 12; Equitable Life Assur. Soc. of United States v. Arrowood, supra; North American Accident Ins. Co. v. White, 258 Ky. 513, 80 S.W.2d 577; Equitable Life Assur. Soc. of United States v. Green, 259 Ky. 773, 83 S.W.2d 478, and Prudential Ins. Co. v. Kendrick, 262 Ky. 297, 90 S.W.2d 52.

In Williams v. Union Central Life Ins. Co., 291 U.S. 170, 180, 54 S.Ct. 348, 352, 78 L.Ed. 711, 92 A.L.R. 693, the Chief

Justice said: "While it is highly important that ambiguous clauses should not be permitted to serve as traps for policyholders, it is equally important, to the insured as well as to the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations."

The evidence (all of which by agreement of parties was taken by depositions) shows that the defendant, E. H. Patton, was an active, energetic business man about forty years of age residing at Somerset, Kentucky. For a year or more before applying for the policy, which was issued without medical examination, he had suffered recurring attacks of severe pain and other discomfort in the abdominal or lower bowel region for which he received treatment from time to time from Dr. Norfleet and Dr. Wahl, local physicians engaged in general practice at Somerset.

Dr. Norfleet became fearful "that he might have gastric gas or duodenal ulcers". Finally, upon the advice of his local physicians, Mr. Patton went to the Lexington Clinic at Lexington, Kentucky, for examination by Dr. W. S. Wyatt, a specialist in internal medicine. Dr. Wyatt's first examination of Mr. Patton took place on August 8, 1935, within less than two months after the issuance of the policy and more than four months before the insurance became effective to cover heart trouble. From the history given him by Mr. Patton at that time, Dr. Wyatt reached the conclusion that for quite a while Mr. Patton had been suffering attacks of angina pectoris. He testified:

"A. * * * our opinion was that he had a definite gall-bladder disease, and was having attacks of Angina Pectoris.

"Q. 23. What is Angina Pectoris, Doctor? A. It is due to pain from the blood supply in the coronary arteries of the heart getting shut down.

"Q. 24. What kind of a disease do you call it? A. It is a disease of the heart or arteries.

"Q. 25. It being in the class of heart diseases? A. It is due to the disease of the coronary arteries.

"Q. 26. It is classed medically as a heart disease? A. Heart disease; that is right.

"Q. 27. On what did you base that diagnosis of Angina Pectoris? A. On his symptoms.

* * *

"Q. 34. Based on the history which Mr. Patton gave you at that time, and on your own examination in the light of that history, are you able to state when you think that Angina Pectoris originated? A. No. I could not say definitely about that. I dont know. I have no idea to tell about that, other than just what he said here in the beginning. He said here, (reading) evidently sometime,—'in the past year and a half' previous to August 8th 'I had attacks' ".

Dr. Wyatt saw Mr. Patton on two later occasions in 1935, and communicated with his local physicians in regard to his condition. On September 11, 1936, Mr. Patton suffered a severe heart attack, as a result of which he was taken to St. Joseph's Hospital at Lexington and there remained from October 7 to November 5, at which time he was again examined by Dr. Wyatt, who found that by that time the disease had so affected the muscles of his heart the electrocardiagram showed definite coronary heart disease. Dr. Wyatt considered that the developments in the case confirmed his previous conclusion that in August, 1935, and prior thereto Mr. Patton was suffering with heart disease.

The testimony of Dr. Emmet F. Horine, of Louisville, Kentucky, a specialist in diseases of the heart, who examined and attended Mr. Patton on September 24, 1936, and thereafter, tends to strengthen and fortify the opinion expressed by Dr. Wyatt.

The testimony of these physicians, eminent specialists of long experience in the field of internal medicine, is convincing that the heart trouble from which Mr. Patton's disability resulted originated long before the insurance provided by the policy became effective to cover disability resulting from that disease and this conclusion is not substantially weakened by the testimony introduced on behalf of the defendant. The preponderance of the evidence leads to the conclusion that the disability for which the defendant seeks to recover is not within the coverage of the policy upon which the suit is based, and hence recovery must be denied.

It appears from the record that on June 26, 1937, before the Association dis-

covered the facts later developed in this litigation, it executed and delivered to defendant, Patton, a draft of $996.65 purporting to be in consideration of the surrender of the policy and full settlement of all liability under it. Asserting that he was induced to surrender the policy and accept the settlement by fraud and misrepresentation, Mr. Patton promptly disavowed the settlement and refused to collect the draft although he has retained it in his possession. So far as the record discloses, he claims no right or interest in the draft by virtue of the settlement, but rests his right to retain and collect it, as well as to recover additional benefits, upon the merits of his claim under the policy. It necessarily follows from the conclusions herein stated that the defendant is not entitled to the draft. It should be surrendered or properly cancelled.

Let findings of fact, conclusions of law and judgment in conformity herewith be submitted for entry.